880 F.2d 1287
 55 Ed. Law Rep. 95
 Elizabeth ANDREWS, Norma W. Bergman, Lyman Howard, Phil
McGregor, Donna L. Wagner, David Williamson, H. Paul Womack,
Jr., in their official capacities as members of the DeKalb
County Board of Education, DeKalb County Board of Education,
DeKalb County School District, Preston W. Williams, Carolyn
Crowder, Joseph G. Martin, Jr., Richard E. Roymer, D.F.
Glover, Robert Waymer, June Cofer, Ina Evans, Carolyn
Yancey, in their official capacities as members of the
Atlanta Board of Education, Atlanta Board of Education,
Louise Radloff, Jeff Moore, Bob Wood, Stan Jones, Daniel
Parks, In their official capacities as members of the
Gwinnett County Board of Education, Gwinnett County Board of
Education, Gwinnett County School District, Plaintiffs-Appellants,
v.
James LEDBETTER, etc., et al., Defendants-Appellees,
Association for Retarded Citizens of Georgia, Inc., Intervenor.
 No. 88-8319.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 21, 1989.
 
 Victoria Sweeny, Tennant, Davidson, Thompson & Sweeny, P.C., Lawrenceville, Ga., for Radloff, et al.
 Charles L. Weatherly and Julie J. Jennings, Weekes & Candler, Decatur, Ga., for Andrews, et al.
 Jonathan A. Zimring, Atlanta, Ga., for intervenor, Ass'n for Retired citizens.
 Warren C. Fortson, Fortson and White, Atlanta, Ga., for Atlanta Bd. of Educ.
 Patrick W. McKee, Georgia's Atty. Gen. Office, Atlanta, Ga., for Dr. Rogers, Georgia Bd. of Educ.
 Patricia Downing, Georgia's Atty. Gen. Office, Atlanta, Ga., for Ledbetter.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before RONEY, Chief Judge, and HILL, Circuit Judge, and MARCUS*, District Judge.
 HILL, Circuit Judge:
 
 
 1
 Appellants, collectively referred to as the local educational agencies or LEAs, appeal the district court's grant of the state appellees' motion to dismiss or for summary judgment.[1] We hold that appellants do not possess a statutory right to bring this suit and affirm.
 
 
 2
 The LEAs sought a declaratory judgment in district court that the Georgia Department of Education (DOE) and Georgia Department of Human Resources (DHR) are obligated under the Education of the Handicapped Act (the Act or the EHA), 20 U.S.C. Sec. 1400, et seq. (1982), to provide all handicapped children in Georgia a free appropriate public education, including residential placement services if needed. The EHA confers upon handicapped children an enforceable substantive right to a free appropriate public education that includes special education and related services designed to meet the child's unique needs.[2] The statute conditions federal assistance upon a state's compliance with the substantive and procedural goals of the Act. In order to qualify for federal funds, a state, through its educational agency, must develop policies, incorporated in a state plan to be approved by the federal Secretary of Education, that assure all disabled children within the state the right to a free appropriate public education. The DOE has developed a state plan meeting with federal approval that qualifies Georgia for federal funding. Appellants pointed out that the DOE and the DHR entered into an interagency cooperative agreement in 1986, requiring the DHR to assist the DOE with the placement of severely handicapped children in twenty-four hour residential service programs in state-operated or contracted facilities within Georgia. The two state agencies allegedly failed to uphold their duties; the LEAs insisted that, without the DOE and DHR's assistance, they are unable to provide anything more than inappropriate daycare programs for severely handicapped children.[3] In 1987, the DOE and the DHR amended the interagency cooperative agreement, placing the sole responsibility for providing residential services on the LEAs.
 
 
 3
 The threshold and dispositive issue in this case is one of standing. We agree with the district court's determination that "[n]othing in the statute itself and no case authority construing the Act supports [the LEAs'] position that a local educational authority may sue under the EHA in order to force the state educational agency to provide needed services."[4] Although appellants concede that no provision of the EHA expressly grants LEAs a right of action against a state educational agency to compel compliance with the statute, they refer to specific statutory and regulatory provisions in an attempt to support an argument that an implied right of action is found in the statute's overall approach to LEAs. Appellants assert that the EHA assigns them specific duties and requires them to provide special education and related services to handicapped children. They complain that the state educational agency, upon which the EHA places primary responsibility for educating handicapped children, is not fulfilling its duties under the statute. Therefore, appellants, in turn, allegedly are unable to fulfill the role assigned to them by statute, and so risk the threat of litigation brought by handicapped children whose needs are not being appropriately served. The LEAs conclude that their statutory duties necessarily create statutory standing for them to bring any kind of action that would promote adherence to the Act's provisions.
 
 
 4
 An examination of the EHA and its accompanying regulations reveal that LEAs are given an important role under the EHA. However, the Act's procedural safeguards clearly are designed to provide handicapped children and their parents or guardians a way to assert a handicapped child's right to a free appropriate public education. Sec. 1415(a). With the input of the handicapped child's parents or guardians, teachers, specialists, and, whenever appropriate, the child, an LEA develops the child's individualized education program (IEP). Sec. 1401(19). Among other things, the IEP states the child's present level of educational performance, sets out annual goals, specifies educational services to be provided by the LEA, and determines the criteria for evaluating the child's progress. IEPs are subject to review and revision on at least an annual basis. Parents or guardians must be notified of any proposal or refusal to change the identification, evaluation, or educational placement of a disabled child or the provision of a free appropriate public education to such child. Sec. 1415(b)(1)(C); 34 C.F.R. Sec. 300.504(a)(1) and (2) (1988). Both parents or guardians and LEAs are given the right to present administrative complaints and receive an impartial due process hearing concerning an LEA's provision for a free appropriate public education. Any "aggrieved party" which has received an unfavorable administrative hearing decision may then "bring a civil action with respect to the complaint ... in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." Sec. 1415(e)(2).
 
 
 5
 It is clear that the Act's procedures, including the possibility of review in state or federal court, are set up to resolve disputes regarding particular individualized education programs. Within this defined context, an LEA has the right to challenge provisions of a handicapped child's IEP, including appealing a state educational agency's administrative hearing decision regarding such provisions.[5] However, nothing indicates that Congress intended to grant an LEA statutory standing to bring suit to compel a state agency to fulfill its statutory duties.
 
 
 6
 Appellants have not cited and research has not uncovered any cases in which an LEA has brought suit pursuant to the EHA or its related regulations to compel a state educational agency to perform its statutory obligations. Moreover, the two Supreme Court cases cited by appellants do not support their contention that they have statutory standing to bring this suit. School Committee of Town of Burlington, Mass. v. Dept. of Education of Massachusetts, 471 U.S. 359, 105 S.Ct.1996, 85 L.Ed.2d 385 (1985); Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Appellants insist that the Supreme Court in these cases recognized that Congress contemplated that a district court may use its broad equitable powers to grant such relief as it determines is appropriate to implement the purposes of the EHA. They contend that their suit seeks such equitable relief and thus is within the actions Congress contemplated when enacting the Act.
 
 
 7
 The Supreme Court in Burlington and Honig considered sections of the EHA that govern disputes over a disabled child's IEP. The Court in Burlington addressed the question of whether a district court has the authority to order an LEA to reimburse parents for expenditures on a private special education of a child who had not been provided with a free appropriate public education. The Court determined that section 1415(e)(2), which gives any party aggrieved by the findings and decision of an administrative due process hearing a right to bring a civil action, confers broad discretion on the court to order appropriate relief such as tuition reimbursement. 471 U.S., at 369-70, 105 S.Ct., at 2002-03. The Court added that the statute's reference to "appropriate" relief indicated that equitable considerations are relevant in fashioning relief under the EHA. Id., at 374, 105 S.Ct., at 2005. In Honig, the Court interpreted Sec. 1415(e)(3) that requires that a child's educational placement remain the same during the pendency of proceedings involving disagreement over such placement. The Court refused to read an exception in the so-called "stay put" provision that would allow a state or LEA to unilaterally exclude disabled children from the classroom for dangerous or disruptive conduct emanating from their disabilities. 484 U.S., at ----, 108 S.Ct., at 604-05. However, the Court observed that school officials still have available other procedures for dealing with disruptive children, including "an opportunity to invoke the aid of the courts under section 1415(e)(2), which empowers courts to grant any appropriate relief." Id., at ----, 108 S.Ct., at 605. The Court's analyses and holdings in these two cases were confined to the specific context of disputes involving the IEPs of particular children. In no way did the Court indicate that the power of the district courts to effect equitable relief in these well-defined, statutory-backed actions would extend to a suit seeking broad injunctive relief and lacking statutory basis.
 
 
 8
 The LEAs express what may well be a commendable concern that handicapped children in their districts may not be receiving the free, appropriate, public educations to which they are entitled. Nonetheless, Congress did not grant LEAs the right to bring an action to ensure that the Act's mandates are carried out. In this case, no LEA is challenged by a handicapped child, or his parent or guardian, for failing to provide a free appropriate public education. Should such a case arise, it may be that the LEA may defend by asserting that the state educational agency is primarily and ultimately responsible for the Act's implementation. See Sec. 1412(6); Sec. 1414(d). Of course, the resolution of such an issue awaits an appropriate case.
 
 
 9
 AFFIRMED.
 
 
 
 *
 Honorable Stanley Marcus, U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Appellees had responded to appellants' complaint by filing a motion to dismiss in which they argued that the action was barred by the Eleventh Amendment, the issues were nonjusticiable, and the appellants lacked standing to bring the action. The LEAs responded, and the state agencies filed a reply in which an additional ground of mootness was added to support the motion to dismiss. The district court ordered the LEAs to respond specifically to the mootness issue. In addition, the court realized that it would need to consider evidence outside the pleadings when evaluating the mootness issue, and therefore, it converted the motion to dismiss into a motion for summary judgment under Fed.R.Civ.P. 56(c)
 
 
 [2]
 For other discussions of the Act's purpose and procedures, see Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); Board of Education of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); Jefferson County Board of Education v. Breen, 853 F.2d 853 (11th Cir.1988); Manecke v. School Board of Pinellas County, Fla., 762 F.2d 912 (11th Cir.1985), cert. denied, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986)
 
 
 [3]
 The LEAs illustrated the problem by referring to case studies of handicapped children who have not received the residential services required under the particular child's individualized education program
 
 
 [4]
 Issues involving mootness and the Eleventh Amendment also were argued on appeal. Because our holding that appellants lack a statutory right to sue is dispositive, we need not address these other issues in detail. The district court found that the amendment to the interagency agreement mooted the claims raised by the LEAs. The court concluded that an interagency agreement is not itself part of a state educational plan; therefore, neither the EHA nor its regulations require that the agreement or the amendment must be available for public comment before being adopted. The court also found that even if the interagency agreement were subject to public notice and comment, this amendment was excepted because it merely clarified the agreement by expressly stating that the DHR was not obligated to provide residential placement services. On appeal, appellants no longer vigorously press the argument that the DHR is obligated to act under the EHA. However, appellants do continue to insist that the DOE still has obligations to fulfill under the EHA regardless of any agreement it may or may not have with the DHR
 The district court also held that the Eleventh Amendment barred the LEAs from suing the state agencies under the EHA. On appeal, questions were raised as to whether Congress in enacting the EHA abrogated the state's Eleventh Amendment immunity and whether the prospective relief inherent in the declaratory judgment that is sought is included within an exception to the Eleventh Amendment's prohibition of suits against states. Recently, the Supreme Court in Dellmuth v. Muth, --- U.S. ----, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989), decided that the EHA does not abrogate the States' Eleventh Amendment immunity from suit, and, thus, the Amendment bars a parent's attempt to collect tuition reimbursement from Pennsylvania.
 
 
 [5]
 See Sec. 1415; 34 C.F.R. Sec. 300.506; See also School Committee of Town of Burlington, Mass. v. Dept. of Education of Mass., 471 U.S. 359, 105 S.Ct.1996, 85 L.Ed.2d 385 (1985); Board of Education of City of New York v. Ambach, 612 F.Supp. 230 (E.D.N.Y.1985); Norris v. Massachusetts Dept. of Education, 529 F.Supp. 759 (D.Mass.1981) (cases in which an LEA challenged a state educational agency's administrative hearing decision regarding a handicapped child's individualized education program)