728 F.Supp. 910 (1990)
The BOARD OF EDUCATION OF the SENECA FALLS CENTRAL SCHOOL DISTRICT, Plaintiff,
v.
The BOARD OF EDUCATION OF the LIVERPOOL CENTRAL SCHOOL DISTRICT, Defendant.
No. CIV-89-1525T.
United States District Court, W.D. New York.
January 17, 1990.
*911 Harris, Beach & Wilcox (Paul R. Braunsdorf, of counsel), Rochester, N.Y., for plaintiff.
O'Hara & Crough (Susan T. Johns, of counsel), Syracuse, N.Y., for defendant.
TELESCA, Chief Judge.
Plaintiff Board of Education of the Seneca Falls Central School District ("Seneca Falls") brought this action under the Education of All Handicapped Children Act, 20 U.S.C. §§ 1400 et seq. (the "EHA"), to enjoin the Board of Education of the Liverpool Central School District ("Liverpool") from unilaterally removing ten-year old Joseph Thomas ("Joseph"), a handicapped child, from one of its special education programs. Following initial argument of this motion, I directed the parties to submit further briefs on the issues involved and ordered that Joseph remain in the Liverpool special education program pending resolution of the plaintiff's motion. For the reasons discussed below, I find that the plaintiff lacks standing to challenge the defendant's proposed exclusion of Joseph from its educational program. Accordingly, the plaintiff's complaint is dismissed for lack of subject matter jurisdiction.
The EHA and Article 89 of the New York State Education Law (N.Y.Educ. Law § 4401, et seq. (McKinney 1981)) require that each school district provide a "free appropriate public education" to handicapped children between the ages of 3 and 21 residing within its boundaries. The local educational agency of each school district ("LEA") must establish a committee on the handicapped to review and evaluate all information concerning each handicapped child and develop an individualized educational program ("IEP") to meet his special needs. See N.Y.Educ.Law §§ 4402(1)(b)(1), 4402(3); 20 U.S.C. §§ 1412, 1414(a)(5). If a suitable program is not available within the school district of residence ("home district"), that district may contract with another district "for such special services or programs as ... [the LEA] deem[s] reasonable and appropriate." N.Y.Educ.Law § 4402(2)(b)(1).
The parties to this litigation, Seneca Falls and Liverpool, are LEA's within the meaning of the EHA and are thus bound by its procedural and substantive obligations regarding the education of handicapped children within their districts. The principal party in interest here is Joseph Thomas, a ten-year old autistic child who is currently residing in the Seneca Falls District. As Joseph's home district and in accordance with its responsibilities under the Act, the Seneca Falls Committee on Special Education ("CSE") developed an IEP for Joseph which required that he be placed in a specialized educational program with limited mainstreaming and related services. Such a program, however, was unavailable in Seneca Falls and the plaintiff accordingly contracted with the defendant to have Joseph enroll in a Liverpool educational program which satisfactorily complied with his IEP. After Joseph's parents consented to that program and placement, Joseph began attending the Morgan Road Elementary School in defendant's district on September 7, 1989. On September 29, 1989, the defendant notified the plaintiff that pursuant to an alleged condition in their agreement, it would no longer provide special education services to Joseph after October 20, 1989.
The plaintiff has since sought to provide an appropriate alternative program in a location other than Liverpool. Although plaintiff recommended a BOCES program in Newark, New York, Joseph's parents did not consent to that placement or program and requested an impartial hearing pursuant to § 1415(b)(2).
Plaintiff Seneca Falls now seeks to enjoin the defendant from excluding Joseph from its program on the grounds that such unilateral action violates the EHA's "stay put" provision. § 1415(e)(3). That provision provides that whenever a change in an educational program is proposed, the handicapped child "shall remain in ... [his] then current educational placement" until an impartial *912 hearing and any attendant appeals have been completed. I find, however, that the plaintiff lacks standing to raise this issue and is therefore not the proper party in interest to bring this matter before this Court.

DISCUSSION
A plaintiff may properly invoke the power of the federal judiciary only when it has standing to sue. This requirement of standing arises out of constitutionally imposed limitations on federal court jurisdiction as well as certain prudential considerations regarding its exercise. Valley Forge Christian College v. Americans United For Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). "In both dimensions ... [standing] is founded ... [upon a] concern about the proper  and the properly limited  role of the courts in a democratic society." Warth, 422 U.S. at 498, 95 S.Ct. at 2205.
To satisfy constitutionally imposed limits on standing, a plaintiff must allege that it has suffered some actual or threatened injury which is redressable by the court and which is fairly traceable to the challenged action. Valley Forge Christian College, 454 U.S. at 472, 102 S.Ct. at 758; Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). This requirement of an alleged "injury in fact" "eliminate[s those] claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant," Gladstone, Realtors, 441 U.S. at 99, 99 S.Ct. at 1607, and "assure[s] that concrete adverseness which sharpens the presentation of issues upon which the court[s] so largely depend[] for [the] illumination of difficult constitutional" and statutory issues, Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).
Even when a case satisfies this constitutional limitation, a plaintiff may still lack standing under certain judicially imposed prudential considerations by which the courts seek "to avoid deciding questions of broad social import where no individual rights would be vindicated." Gladstone, Realtors, 441 U.S. at 99-100, 99 S.Ct. at 1607-08. A plaintiff lacks standing, for example, where it attempts to assert the legal interest of a third party, or where it attempts to assert a right which does not at least "`arguably [fall] within the zone of interests ... protected or regulated' by the statutory framework within which its claim arises." Gladstone, Realtors, 441 U.S. at 100 n. 6, 99 S.Ct. at 1608 n. 6 (quoting Simon v. Eastern Kentucky Welfare Rights Org. 426 U.S. 26, 39 n. 19, 96 S.Ct. 1917, 1925 n. 19, 48 L.Ed.2d 450 (1976); Data Processing Service v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829-30, 25 L.Ed.2d 184 (1969)); see also In Re Application of Dow Jones and Co., Inc., 842 F.2d 603, 606 (2d Cir.1988). The defendant argues that Seneca Falls does not have standing here because it has failed to allege a cognizable injury and because its asserted interest is not one protected under the EHA.
To satisfy the critical constitutional test of personal injury in fact, the plaintiff must allege that it has suffered "a distinct and palpable injury," Warth, 422 U.S. at 501, 95 S.Ct. at 2206, which was caused by the defendant's putatively illegal conduct and which is likely to be redressed if the requested relief is granted, Valley Forge Christian College, 454 U.S. at 472, 102 S.Ct. at 758; Gladstone, Realtors, 441 U.S. at 100, 99 S.Ct. at 1608. It is not enough that some injury might occur in the future; the harm must be "real and immediate," not "conjectural" or hypothetical. O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); Golden v. Zwickler, 394 U.S. 103, 109-110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).
Seneca Falls argues that any release of Joseph will subject it to civil liability for failure to comply with the EHA's "status quo" and "free appropriate public education" provisions. While an immediate or inevitable threat of suit may constitute an "injury in fact" for standing purposes, *913 O'Shea, 414 U.S. at 496-97, 94 S.Ct. at 676; Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); Caribbean Marine Services Co., Inc. v. Baldrige, 844 F.2d 668, 675 (9th Cir.1988), I find the risk of civil liability here to be too attenuated and conjectural to satisfy this constitutional prerequisite. "Multiple contingencies" would have to occur before the plaintiff would be exposed to any risk of economic harm, making the threat of liability merely "potential" rather than "inevitable." See Baldrige, 844 F.2d at 675; City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d 231, 239 (9th Cir.), cert. denied, 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980). Seneca Falls might incur an actual injury only if Liverpool were permitted to unilaterally exclude Joseph, if no other appropriate program existed upon his release, and if Joseph's parents subsequently threatened to sue. See O'Shea, 414 U.S. at 497, 94 S.Ct. at 676 (no standing where injury will occur only "if respondents proceed to violate unchallenged law, and if they are charged, held to answer, and tried in any proceedings before petitioners" (emphasis in original)). While Liverpool may indeed be allowed to remove Joseph unilaterally, it is far from clear that "no other appropriate placement exists." See Plaintiff's Complaint at ¶ 21. In ¶ 15 of its complaint, the plaintiff acknowledges that it has recommended an alternative BOCES program in Newark which it undoubtedly presumes satisfies Joseph's specialized needs. While the appropriateness of this placement must ultimately be resolved by an impartial hearing officer, the contingent nature of this determination renders the plaintiff's interest attenuated at best.[1]
Even if there were no other appropriate placement, there is no indication that the plaintiff would subsequently be threatened with litigation. While Joseph's parents have voiced their opposition to his transfer, the plaintiff has failed to allege, nor is there any reason to believe, that a threat of suit would be either imminent or inevitable should Liverpool remove Joseph from its classrooms. I therefore find the risk of injury alleged here far too speculative to satisfy the jurisdictional limitations imposed upon this Court by Article III.[2]
Even had the plaintiff properly alleged a direct or imminently threatened injury-in-fact, I find that its claim does not fall within the zone of interests intended to be protected by the EHA. Association of Data Processing Service Organizations, 397 U.S. at 153, 90 S.Ct. at 830; In Re Application of Dow Jones and Co., Inc., 842 F.2d at 606. Although LEA's such as Seneca Falls play an important role in implementing the EHA, the procedural safeguards at issue here are clearly designed for the benefit of handicapped children and their parents as means of ensuring a handicapped child's right to a free appropriate public education. Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988) ("many of the EHA's procedural safeguards protect the rights of parents and school children"); Andrews v. Ledbetter, 880 F.2d 1287, 1289 (11th Cir.1989); 20 U.S.C. § 1415(a)-(b)(2). Under the Act's regulatory scheme, LEA's are accorded only a limited procedural right to appeal the findings and decision rendered in an impartial hearing, which itself can be initiated in the first instance only by the child's parents or guardians. See 20 U.S.C. §§ 1415(a), 1415(b)(1), 1415(e)(2); 34 C.F.R. § 300.506. Nothing in the EHA "indicates that Congress intended to grant an LEA [such as Seneca Falls] statutory standing *914 to bring suit to compel ... [another] agency to fulfill its statutory duties." Andrews, 880 F.2d at 1290.
I find plaintiff's reliance on the Supreme Court's recent decision in Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), unpersuasive in this regard. In that case, the Court refused to read an exception into the Act's so-called "stay put" provision of § 1415(e)(3) that would allow a state or LEA to unilaterally exclude disabled children from the classroom for dangerous or disruptive conduct. 108 S.Ct. at 604-05. The Court observed that school officials had adequate alternative procedures available for dealing with disruptive children, including "an opportunity to invoke the aid of the courts under § 1415(e)(2), which empowers ... [them] to grant any appropriate relief." Id. at 605. However, as the Eleventh Circuit noted in Andrews v. Ledbetter, the Supreme Court's holding in this case was itself "confined to the specific context of disputes involving IEPs of particular children ... [and i]n no way ... indicate[d] that the power of ... district courts to effect equitable relief in these well-defined statutory-back actions extend[s] to a suit seeking broad injunctive relief and lacking statutory basis." Andrews, 880 F.2d at 1290. The Eleventh Circuit accordingly concluded on an analogous set of facts that an LEA has no standing to challenge the EHA policies of a state educational agency which allegedly might expose the LEA to the threat of litigation for failure to meet its statutory obligations. Similarly, I find that the plaintiff Seneca Falls, also an LEA, lacks standing to invoke the EHA's stay put provision to prevent Liverpool, another LEA, from removing Joseph from its specialized program. Accordingly, the plaintiff's motion for preliminary injunction is denied and its complaint is dismissed.
ALL OF THE ABOVE IS SO ORDERED.
NOTES
[1] Indeed, the fact that Joseph's parents objected to this placement reveals why they, not the plaintiff, are the proper party in interest to challenge the propriety of any change from Joseph's present enrollment at Liverpool. Should the plaintiff, for some reason, elect to rest on the soundness of its recommendation, its interest in preventing Joseph's transfer from Liverpool would no longer exist, while that of the parents would presumably remain.
[2] In its brief, the plaintiff argues that the Court should retain jurisdiction of this case because, from a practical standpoint, dismissal would undermine any subsequent attempt by Joseph's parents to enforce the status quo provision. While this objection might suggest a relaxation of the prudentially-imposed standing requirements, the constitutionally mandated showing of an "injury in fact" cannot be subordinated to such pragmatic considerations.