ASBURY PARK BOARD OF
EDUCATION, Plaintiff,

v.

HOPE ACADEMY CHARTER
SCHOOL, et al.,
Defendants.

Civil Action No. 02–2421 (MLC).

United States District Court,
D. New Jersey.

Aug. 27, 2003.

Stephen J. Edelstein, Esq., Schwartz, Simon, Edelstein, Celso & Kessler, LLP, Florham Park, NJ, for Plaintiff.

Howard M. Nirenberg, Esq., Nirenberg & Varano, Esqs., Hackensack, NJ, for Defendant Hope Academy Charter School.

Fredrick P. Niemann, Esq., Hanlon & Niemann, PC, Freehold, NJ, for Defendant Academy Charter High School.

Sarah G. Crowley, Esq., Office of the New Jersey Attorney General, Trenton, NJ, for Defendant State of New Jersey, Department of Education.

Lois H. Goodman, Esq., Carpenter, Bennett & Morrissey, Newark, NJ, for Amicus New Jersey Charter Public Schools Association.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the court on the motion by plaintiff Asbury Park Board of Education ("school district") for summary judgment on the complaint and separate cross motions by defendants Hope Academy Charter School ("Hope Academy") and the State of New Jersey Department of Education ("NJDOE") for summary judgment dismissing the complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 56. The complaint seeks declaratory and injunctive relief that section 18A:36A–11(b) of the New Jersey Charter School Program Act ("Charter School Act"), as applied by defendant NJDOE, conflicts with and is preempted by section 1412(a)(1) and (5) of the Federal Individuals with Disabilities Education Act ("IDEA"). Because we find, as explained below, that the IDEA does not afford the school district a private right of action in this action, we will (1) deny the motion; (2) grant the cross motions; and (3) dismiss the complaint in its entirety.

## BACKGROUND

### I. *Statutory Background*

#### A. **Relevant Federal Law: IDEA**

The IDEA "represents an ambitious federal effort to promote the education of handicapped children." *Bd. of Educ. v. Rowley,* 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). States receiving federal funding under the IDEA, including New Jersey, must comply with federal guidelines and regulations established to assure a "free appropriate public education" ("FAPE") for disabled children. 20 U.S.C. § 1412(a)(1). The IDEA also mandates that states educate disabled children with nondisabled children whenever possible ("IDEA's mainstreaming requirement"). 20 U.S.C. § 1412(a)(5); *Oberti v. Bd. of Educ.,* 995 F.2d 1204, 1206–07, 1213–15 (3d Cir.1993). Moreover, "special education and related services must be tailored to the unique needs of the handicapped child by means of an individualized education program ['IEP']." *D.B. v. Ocean Twp. Bd. of Educ.,* 985 F.Supp. 457, 471 (D.N.J.1997).

### B. **Relevant State Law: Charter School Act and State Implementation of IDEA**

The Charter School Act was enacted to establish charter school programs in New Jersey. Among other things, it provides:

> A charter school shall comply with the provisions of chapter 46 of Title 18A of the New Jersey Statutes concerning the provision of services to handicapped students; except that the fiscal responsibility for any student currently enrolled in or determined to require a private day or residential school shall remain with the district of residence.

N.J.S.A. § 18A:36A–11 ("Charter School Act's IDEA provision"). The statute referenced in the Charter School Act's IDEA provision reflects New Jersey's participation in the IDEA. *See* N.J.S.A. §§ 18A:46–1 to:46–46; *see also* N.J.A.C. §§ 6:28–1 to –11; *Lascari v. Bd. of Educ.,*

116 N.J. 30, 35, 560 A.2d 1180, 1182 (1989). It requires school districts to, *inter alia*, develop an IEP and determine the appropriate educational placement for each disabled child, after an evaluation by a child study team ("CST"). N.J.S.A. § 18A:46–5.1; N.J.A.C. § 6A:14–3.1(b).

## II. *Factual and Procedural Background*

Defendants Academy Charter High School ("Charter High") and Hope Academy (collectively "the charter schools") are organized pursuant to the Charter School Act and accept students from the school district. (Compl.¶¶ 6–7.) At least two "special needs" students previously attending regular education classes in the school district ("the students") have enrolled in the charter schools.[1] (Schwartz Certif. filed 1–10–03, Exs. 5–D; 6 ¶¶ 6, 9; 8 ¶¶ 6, 9; 7–D.) The charter schools then transferred the students, without consulting the school district, to private schools and sought reimbursement from the school district, pursuant to the Charter School Act's IDEA provision. (*Id.*, Exs. 6 ¶ 15, 18; 8 ¶ 15.)

The school district temporarily paid for the students' education at the private schools, but advised the charter schools that it disagreed with the placements. (Schwartz Certif., Exs. 5–E & 7–F.) The school district also wrote to NJDOE to express its opinion that the charter schools should have sought input from the school district before sending the students to private schools. (*Id.*, Ex. 3–C.) NJDOE, however, advised the school district that the charter schools have their own CSTs as well as the authority to conduct evaluations, develop IEPs, and determine educational placements for disabled students. (*Id.*, Ex. 3–A.)

The school district instituted this action on May 17, 2002, seeking, *inter alia*, a declaratory judgment that NJDOE's application of the Charter School Act's IDEA provision conflicts with and is preempted by the IDEA's mainstreaming requirement. *See* 20 U.S.C. § 1412(a)(1); N.J.S.A. § 18A:36A–11(b). It then moved for summary judgment on January 10, 2003. Defendants oppose the motion, arguing, among other things, that NJDOE's application of the Charter School Act's IDEA provision is consistent with the IDEA's mainstreaming requirement. (Hope Academy's Br. at 6–22; NJDOE's Br. at 10–16; Charter High's Br. at 5–9.)

 Charter High also contends in opposition that the school district does not have the right to challenge the students' placement under the IDEA. (*Id.* at 11.) We agree with Charter High insofar as it asserts that the IDEA does not expressly or implicitly afford the school district a private right of action here.[2]

---

1. The school district does not challenge the placements of any particular students. (Nirenberg Certif., Ex. A ¶ 25; Pl's Reply Br. at 13.) Rather, it refers to the students to provide examples of the charter schools' failure to consult with the school district before placing disabled students at private schools.

2. Charter High "questions whether [the school district] even has standing to raise the issue of the placement of [the students]. Challenge to a particular placement lies with the parents or guardian of the special needs child." (Charter High's Br. at 11.) Before addressing statutory standing, however, a court must answer the threshold question of whether a statute affords a plaintiff a private right of action. *E.g., Erienet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 520 (3d Cir.1998); *see Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 240 (3d Cir.2002) (noting statute at issue affords private right of action before addressing standing). Accordingly, we find that Charter High implicitly raised the private-right-of-action issue.

Even if Charter High had not raised the private-right-of-action issue, the Court could address it *sua sponte*. *See, e.g., Salcer v. Mer-*

## ANALYSIS

■ The private-right-of-action require-ment stems from the federal courts' limit-ed jurisdiction pursuant to Article III of the Constitution; "we may not hear ac-tions without authorization from Con-gress." *S.C. v. Deptford Twp. Bd. of Educ.*, 213 F.Supp.2d 452, 456 (D.N.J. 2002). Accordingly, in every case we must determine whether a statute at issue ex-pressly or implicitly reveals a Congression-al intent to create a private right of action on behalf of the plaintiff. *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

## I. *No Express Private Right of Action*

The IDEA provides parents or guard-ians (collectively "parents") an opportunity to present complaints regarding, *inter alia*, the educational placement of their disabled children. 20 U.S.C. § 1415(b)(6). Once a complaint is filed, parents also are entitled to "an impartial due process hear-ing" conducted by a state or local edu-cational agency. 20 U.S.C. § 1415(f)(1). "Any party aggrieved by the findings and decision made ... shall have the right to bring a civil action with respect to the complaint" in federal district court. 20 U.S.C. § 1415(i)(2)(A).

rill Lynch, Pierce, Fenner & Smith, Inc., 682 F.2d 459, 459–60 (3d Cir.1982); *Global Sales, Ltd. v. Applegate Drayage Co.*, No. 90–15273, 1991 U.S.App. LEXIS 14838 (9th Cir. June 14, 1991); *Fino v. Key Bank of N.Y.*, No. 00–375E, 2001 WL 849700, 2001 U.S. Dist. LEX-IS 24358 (W.D.Pa.2001). We also find that, before we conducted oral argument, the school district had notice that summary judg-ment could be entered against it because the IDEA was not the proper vehicle through which to bring its complaint. (*See* 7–8–03 Tr. of Oral Arg.; Hope Academy's Notice of Cr. Mot. for Summ. J.; NJDOE's Notice of Cr. Mot. for Summ. J.; Charter High's Br. at 11.) *See Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903, 910 (3d Cir.1994)

■ The IDEA, therefore, provides an express private right of action only after a party has filed a complaint with respect to a particular child and sought a due process hearing through the state ad-ministrative process. *Compare County of Westchester v. State of New York*, 286 F.3d 150, 152–53 (2d Cir.2002) (no private right of action for counties suing state for al-leged failure to satisfy IDEA require-ments); *and Andrews v. Ledbetter*, 880 F.2d 1287, 1288–91 (11th Cir.1989) (local education agencies cannot sue education department to provide IDEA services ab-sent underlying challenge by handicapped child, parent, or guardian); *with Beth V. v. Carroll*, 87 F.3d 80, 85–88 (3d Cir.1996) (express private right of action for parents who filed complaint but were denied due process hearing); *S.C.*, 213 F.Supp.2d at 456–59 (express private right of action in-cludes school district's third-party com-plaint against NJDOE in action initiated by parents; distinguishing *Ledbetter* and *Westchester*; stating no right to sue absent underlying controversy over particular child); *and Todd D. v. Andrews*, 933 F.2d 1576, 1582–83 (11th Cir.1991) (allowing cross claim by local educational authority against education department in action ini-tiated by parents; distinguishing *Ledbet-ter* ).[3] Because the school district, like the

(district court must give notice and opportu-nity to respond before entering summary judgment *sua sponte* ).

**3.** The *S.C.* court distinguished *Ledbetter* and *Westchester* on the grounds that (1) "those decisions are best explained on grounds of standing, not whether or not the IDEA pro-vides a private right of action;" and (2) "[w]hile a school district may sue a state agency when the school district is a party aggrieved, [the] IDEA does not give a general right to sue in the absence of an underlying controversy over a particular child." 213 F.Supp.2d at 458–59. We agree with the second proposition but not the first one. The IDEA only provides an express private right of action to parties aggrieved by underlying

plaintiffs in *Ledbetter* and *Westchester*, was not aggrieved by the outcome of underlying administrative proceedings in a dispute over a particular child, the IDEA similarly does not afford it an express private right of action.

## II. *No Implied Private Right of Action*

■ Courts consider four factors in determining whether a statute implies a private right of action:

(1) whether the plaintiff is a member of the class "for whose especial benefit the statute was enacted";

(2) whether there is evidence of legislative intent to create or preclude the relief sought;

(3) whether the relief sought is consistent with the legislative scheme;

(4) whether the relief sought is the type that is "traditionally relegated to states" such that federal relief would interfere with the state scheme.

*Mallenbaum v. Adelphia Comms.*, 74 F.3d 465, 469 (3d Cir.1996) (quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).[4] We must focus our inquiry on legislative intent, which includes the first two factors. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23–24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Mallenbaum*, 74 F.3d at 469.

■ The Congressional findings and purposes as well as the legislative history of the IDEA indicate that the individuals for whose "especial benefit the [IDEA] was enacted" are disabled children and their parents. 20 U.S.C. § 1400(c), (d); H.R.Rep. No. 105–95 (1997), *reprinted in* 1997 U.S.C.C.A.N. 78, 79–82. Further, because Congress expressly provided a private right of action in favor of any party aggrieved by underlying administrative proceedings in a dispute over a particular child, it is unlikely that Congress intended to provide a private right of action in the absence of such underlying proceedings. *Westchester*, 286 F.3d at 152 (citing *Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("In view of these express provisions for enforcing the duties imposed ... it is highly improbable that Congress absentmindedly forgot to mention an intended private action.")). We, therefore, find that the first two *Cort* factors have not been met.

A court need not address the second two *Cort* factors once it determines that the first two *Cort* factors have not been met. *Mallenbaum*, 74 F.3d at 470. However, we further note that "federal relief would interfere with the state scheme" for resolving disputes between school districts and charter schools. *Cort*, 422 U.S. at 78, 95 S.Ct. 2080. This is not a case where the school district has no other judicial mechanism for redress at its disposal. *See Beth V.*, 87 F.3d at 89 (plaintiffs excused from pursuing state administrative remedies on futility grounds); *S.C. v. Deptford Twp.*

---

administrative proceedings in a dispute over a particular child. Because the school district is not such a party, it cannot sue pursuant to the IDEA in this action regardless of whether it has standing. *See supra* note 2. Standing includes (1) constitutional standing, i.e. whether the plaintiff has a factual injury caused by the defendant and capable of redressability by a favorable outcome; and (2) prudential standing, including whether the plaintiff's claims lie within the "zone of interests" protected by a particular statute. *See*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (constitutional standing); *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (prudential standing). Because we have found that the IDEA does not afford the school district a private right of action here, we need not address standing.

4. We will refer to these factors as the *"Cort* factors."

*Bd. of Educ.,* 213 F.Supp.2d 452 (D.N.J. 2002) (same). On the contrary, the Charter School Act provides a comprehensive scheme for "[a]ny individual or group" to bring complaints "alleging a violation of [its] provisions." N.J.S.A. § 18A:36A–16.[5] Thus, the school district, through that process, can bring a complaint alleging that the charter schools have not complied with the Charter School Act's IDEA provision.

## CONCLUSION

For the foregoing reasons, we conclude that the IDEA does not afford the school district a private right of action to dispute the placement of the students by the charter schools, absent underlying administrative proceedings in a dispute over a particular child. Accordingly, we will (1) deny the school district's motion for summary judgment; (2) grant NJDOE's and Hope Academy's cross motions for summary judgment; (3) grant *sua sponte* summary judgment in favor of Charter High; (4) toll the statute of limitations on any state law claims as discussed herein for thirty days after the date of entry of this Memorandum and Order; and (5) dismiss the complaint in its entirety. An appropriate order accompanies this memorandum opinion.

---

**5.** The individual or group must present the complaint to the board of trustees of the charter school. N.J.S.A. § 18A:36A–16. If unsatisfied, the individual can seek redress from the Commissioner of Education ("Commissioner") and ultimately through the New Jersey state courts. *Id.; In re Charter Sch.App. of the Greater Brunswick Charter Sch.,* 332 N.J.Super. 409, 413–14, 753 A.2d 1155, 1157 (App.Div.1999) (holding Commissioner's ruling final and appealable; directing Commissioner to order charter school to change administrative structure to comply with Charter School Act), *aff'd,* 164 N.J. 314, 753 A.2d 686 (2000).