No. 80–458. City of South Lake Tahoe et al. *v.* California Tahoe Regional Planning Agency et al. C. A. 9th Cir. Certiorari denied. 

Justice White, with whom Justice Marshall joins, dissenting.

In *Board of Education* v. *Allen,* 392 U. S. 236 (1968), this Court held that members of a local school board had standing to challenge in federal court the constitutionality of a state statute that required them to lend books to parochial school students. Addressing the constitutional requirement that the parties have a "personal stake in the outcome" of the litigation, the Court found such a "stake" in the dilemma that the appellants confronted: a choice between violating their oaths of office to support the United States Constitution or refusing to comply with the statutory requirements, a step which was "likely to bring their expulsion from office and also a reduction in state funds for their school district." *Id.,* at 241, n. 5. The Court of Appeals in the present case stated that

> "[w]ere *Allen* the last word from the Supreme Court on standing, we could simply adopt [its] rationale . . . and determine that the councilmembers in the case before us have standing on the basis that they believe that enforcing the . . . ordinances would violate their oaths of office." 625 F. 2d 231, 236 (1980).

The court declined to follow *Allen,* however, holding instead that our subsequent cases have effectively overruled *Allen.* I do not believe that we have *sub silentio* overruled *Allen.* The Courts of Appeals, however, are in conflict over its continuing validity. Compare *Regents of the Univ. of Minn.* v. *NCAA,* 560 F. 2d 352, 363–364 (CA8 1977), and *Aguayo* v. *Richardson,* 473 F. 2d 1090, 1100 (CA2 1973), with *Finch* v. *Mississippi State Medical Assn., Inc.,* 585 F. 2d 765 (CA5 1978). If the *Allen* doctrine is to be reconsidered, it should be done by this Court, and not by the various Courts of Appeals. I therefore dissent from the denial of certiorari.

The California Tahoe Regional Planning Agency (CTRPA) is a political subdivision of the State of California, exercising responsibility for the development and enforcement of plans for land and resource development in the Lake Tahoe region of California. Cal. Gov't Code Ann. § 67040 *et seq.* (West Supp. 1980). The city of South Lake Tahoe lies within the geographic area regulated by the CTRPA. Petitioners, the city, its Mayor and four council members, are required by law to enforce CTRPA regulations, Cal. Gov't Code Ann. §§ 67072, 67102 (West Supp. 1980). A willful failure of a state official to perform his duty is a misdemeanor, Cal. Gov't Code Ann. § 1222 (West 1980), which may result in removal from office. Cal. Penal Code. Ann. § 661 (West 1970).

In August 1975, the CTRPA enacted the plan of land-use and transportation regulations that is the subject of this lawsuit. Petitioners, believing that enforcement of these regulations would be unconstitutional on a number of grounds,[1] brought suit in Federal District Court seeking injunctive and declaratory relief. The District Court dismissed the action, believing that federal-court abstention was appropriate. The Court of Appeals affirmed, holding that petitioners did not have standing to invoke the jurisdiction of the federal courts.

The Court of Appeals relied primarily on *Schlesinger* v. *Reservists to Stop the War,* 418 U. S. 208 (1974), and *United States* v. *Richardson,* 418 U. S. 166 (1974), to support its conclusion that petitioners could no longer claim standing under

---

[1] Specifically, petitioners alleged that enforcement of the challenged regulations would (1) take property for public use without just compensation and without due process of law, in violation of the Fifth and Fourteenth Amendments; (2) deprive persons subject to the regulations of equal protection of the laws, in violation of the Fifth and Fourteenth Amendments; (3) unreasonably infringe the right to travel, in violation of the Fourteenth Amendment; and (4) conflict with and frustrate the land-use ordinance and transportation plan of the Tahoe Regional Planning Compact, which was approved by Congress, in violation of the Supremacy Clause of Art. VI.

*Allen.* Those cases held that Art. III requires that a party assert more than "the generalized interest of all citizens in constitutional governance" to invoke the jurisdiction of the federal courts. I do not doubt the validity of this principle. See *Los Angeles* v. *Lyons, ante,* p. 934 (WHITE, J., dissenting from denial of certiorari). *Allen,* however, was not, nor could it have been, an exception to this constitutional requirement. Therefore, I do not believe that *Schlesinger* and *Richardson* have had the effect the lower court ascribed to them.

Appellants in *Allen* did not simply express abstract disapproval of a government policy; rather, they were required by their position to act to implement that policy and a failure to act would have threatened immediate injury. At the same time, however, appellants were bound by their oaths to act in a contrary manner. It was this dilemma that created a personal stake in the controversy and that distinguishes their situation from that of the parties in either *Schlesinger* or *Richardson.*[2] Nor is it sufficient to argue that this dilemma could be avoided simply by resignation, as suggested by the concurring opinion below: this alternative only further distinguishes the plaintiffs from other citizens and demonstrates their concrete interests in the controversy. Petitioners in this case face exactly the same kind of dilemma. Therefore, as the Court of Appeals noted, *Allen* controls this situation if it is still good law.

The Court of Appeals also held that the city had no stand-

---

[2] *Allen* also suggested, as an alternative ground, that appellants had standing because a refusal to enforce the statute could bring about a reduction in the state funds for their school districts. On this theory, appellants had standing to represent the interests of their institution and the larger group of people that would be adversely affected by the reduction in funding. Similarly, petitioners in this case alleged that the city would suffer a loss of funds, through a decrease in property values and thereby tax revenues, and sought standing as the representatives of this larger group of residents that would be adversely affected by the statute.

ing because a political subdivision of a State may not raise constitutional objections to the validity of a state statute, citing, *Williams* v. *Mayor of Baltimore,* 289 U. S. 36, 40 (1933); *Newark* v. *New Jersey,* 262 U. S. 192, 196 (1923); *Trenton* v. *New Jersey,* 262 U. S. 182, 188 (1923); *City of New York* v. *Richardson,* 473 F. 2d 923, 929 (CA2 1973); *Aguayo* v. *Richardson, supra,* at 1100–1101. Such a *per se* rule is inconsistent with *Allen,* in which one of the appellants was a local board of education. Furthermore, there is a conflict in the Circuits over the validity of such a rule. Cf. *Rogers* v. *Brockette,* 588 F. 2d 1057, 1067–1071 (CA5 1979), and *City of New York* v. *Richardson, supra.*

Because the jurisdictional questions raised by this case are important and have received conflicting answers in the Courts of Appeals and because the case raises a question of the continuing validity of our own precedent, I would grant certiorari and set the case for plenary consideration.

JUSTICE BRENNAN would also grant the petition for writ of certiorari.