**BARBARA Z., on her own behalf and as parent and next friend of Devin Z., a minor, Plaintiff,**

**v.**

**George OBRADOVICH, Board of Education of District # 156, Illinois State Board of Education and Ellen J. Alexander, Defendants.**

**BOARD OF EDUCATION OF DISTRICT # 156, Defendant/Third–Party Plaintiff,**

**v.**

**The ILLINOIS DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, et al., Third–Party Defendants.**

No. 94 C 3664.

United States District Court,
N.D. Illinois,
Eastern Division.

July 5, 1996.

Margie Best, Chicago, IL, for Plaintiff Barbara Z.

Kathleen R. Hirsman, Scariano, Kula, Ellch & Himes, Chtd., Chicago, IL, for Defendant Board of Education of School District 156.

Sebastian N. Danziger, Assistant Attorney General, General Law Division, Chicago, IL, for Third–Party Defendants Illinois State Board of Education and Department of Mental Health and Developmental Disabilities.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

Board of Education of District # 156 (the "School District") brings a First Amended Cross–Claim against the Illinois State Board of Education ("ISBE") and a First Amended Third–Party Complaint against the Illinois Department of Mental Health and Developmental Disabilities ("DMHDD") (collectively the "State Agencies") seeking damages and injunctive relief under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 et seq. (the "IDEA"), section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 42 U.S.C. § 1983. The parties have filed cross-motions for summary judgment. For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

This case arises out of a dispute regarding the appropriate educational placement of Devin Z., a severely disabled child who resides in the School District and is eligible for services under the IDEA. On June 10, 1993, the School District conducted a multi-disciplinary staff conference to evaluate Devin's special education needs. Following the conference, the School District recommended that Devin attend a public school day program.

Devin's mother, Barbara Z., disagreed with the placement believing that her son's

special education needs required 24–hour private residential placement. Consequently, she requested a Level I due process hearing to resolve the dispute. *See* 105 ILCS 5/14–8.02. On September 14, 1993, the Level I Hearing Officer determined that the School District's placement was appropriate for Devin's educational needs. Barbara Z. subsequently appealed this decision. On April 11, 1994, the Level II Review Officer affirmed the Level I Hearing Officer's determination that a public school day program was appropriate for Devin.

On June 14, 1994, Barbara Z., as Devin's mother and on behalf of her son, sought review of the Level I and Level II administrative decisions in the United States District Court for the Northern District of Illinois pursuant to the IDEA, 20 U.S.C. § 1415(e)(2). She named the School District and its superintendent, ISBE, and the Level II Review Officer as defendants. On August 1, 1994, she also filed a motion for a mandatory preliminary injunction to obtain 24–hour residential placement for Devin.

On August 2, 1994, the School District filed a cross-claim against ISBE and a third-party complaint against DMHDD seeking attorney's fees for litigating at the administrative levels and contribution for Barbara's Z.'s legal fees should she prevail in the underlying litigation. The School District further requested this Court to order the State Agencies to create an agreement that would reimburse the School District for a portion of Devin's 24–hour placement if necessary. On August 24, 1994, ISBE notified the School District that it would be fully reimbursed for all costs of residential placement if that placement was ordered by this Court.

A hearing on the motion for a mandatory preliminary injunction was held on September 7 and 9 of 1994. The School District contested the motion arguing that its proposed public school day program was the appropriate educational placement for Devin. On September 16, 1994, we granted the motion and ordered that Devin be placed in a 24–hour residential program at the Center on Deafness pending outcome of the judicial proceedings.

On October 28, 1994, the School District filed the instant three-count First Amended Cross–Claim (the "cross-claim") against ISBE and two-count First Amended Third–Party Complaint (the "third-party complaint") against DMHDD. Count I of the cross-claim and third-party complaint alleges that the State Agencies have failed to enter into an intergovernmental agreement defining the financial responsibilities of each agency for providing children with disabilities access to an appropriate educational program as required by section 1413(a)(13) of the IDEA. Additionally, Count I alleges that the lack of an interagency agreement caused the School District to engage in costly and time-consuming administrative due process and judicial proceedings to address whether residential placement was necessary to meet Devin's educational and mental health needs. Count II of the cross-claim alleges that these same acts and omissions violated section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Similarly, Count III of the cross-claim and Count II of the third-party complaint allege that the same acts and omissions violated 42 U.S.C. § 1983.

The School District seeks the following relief from the State Agencies: (1) reimbursement for the costs of Devin's residential placement; (2) reimbursement for the attorney's fees which the School District was required to pay Barbara Z. as a prevailing party in the underlying litigation; and (3) declaratory and injunctive relief compelling the State Agencies to comply with the IDEA by developing and implementing the required intergovernmental agreement setting forth the financial responsibilities of each state agency charged with administering the IDEA.

On December 19, 1994, the School District issued a draft payable to Barbara Z. in the amount of $94,474.60. This payment represented attorney's fees and costs allegedly incurred by Barbara Z. as a prevailing party in the underlying litigation. *See* 20 U.S.C. § 1415(e)(4)(B).

On May 15, 1995, Barbara Z. and the School District stipulated to a voluntary dismissal of all claims pending between the parties in the underlying litigation pursuant

to a settlement agreement. This settlement and stipulation did not extend to the School District's cross-claim against ISBE or third-party complaint against DMHDD.

On December 19, 1995, counsel for the School District and the State Agencies appeared before this Court for a status hearing. At that time, the State Agencies informed the Court that there is now an interagency agreement as required by section 1413(a)(13) of the IDEA. Counsel for the School District, however, asserted that the agreement did not comply with the requirements of the Act and, consequently, requested further briefing on the issue. We denied this request and delayed ruling on the pending motions in lieu of a possible settlement of the remaining claims. After settlement negotiations stalled, the parties requested a ruling on the instant cross-motions for summary judgment which we now address.[1]

The School District contends that it is entitled to summary judgment on all claims because: (1) the IDEA requires that as a prerequisite to receiving federal funds, each state must submit a plan which describes in detail the goals, programs, and timetables under which the state intends to educate children with disabilities within its borders; (2) the State Agencies have admitted that the Illinois State Plan does not comply with the IDEA because it does not contain an interagency agreement which describes the obligations of the state agencies charged with ensuring the education of children with disabilities, nor did such an interagency agreement exist at any time during the administrative and court proceedings held to determine the appropriate placement for Devin; and, (3) as a result of the State Agencies' failure to develop and enter into such an interagency agreement as required by the IDEA, the School District has suffered harm in the nature of both unnecessarily incurred attorney's fees and costs, and costs associated with Devin's residential placement.

The State Agencies argue that they are entitled to summary judgment on the following grounds: (1) the School District lacks standing to bring this suit under the IDEA; (2) the lack of an interagency agreement as required by section 1413(a)(13) of the IDEA is immaterial to this case and did not compel the School District to litigate Devin's placement; and, (3) the School District is not a proper plaintiff under 42 U.S.C. § 1983.

## STANDARD

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir.1994). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The moving party bears the burden of demonstrating that there is an absence of evidence to support the position of the nonmoving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 442–43 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994).

■ In making its determination, the Court's sole function is to determine "whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir.1994). Credibility determinations, weighing evidence, and drawing reasonable inferences are

---

1. ISBE and DMHDD originally filed a motion to dismiss which we converted into the present motion for summary judgment after providing appropriate notice and allowing all parties a reasonable opportunity to present material made pertinent to such a motion by Rule 56. *See* Fed.R.Civ.P. 12(b) and advisory committee note; *Burick v. Edward Rose & Sons*, 18 F.3d 514, 516 (7th Cir.1994); *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 377 (7th Cir.1987).

jury functions, not those of a judge when deciding a motion for summary judgment. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

■ When, as here, cross-motions for summary judgment have been submitted, the Court is not obliged to grant judgment as a matter of law for one side or the other. *California Union Ins. Co. v. Liberty Mut. Ins. Co.,* 920 F.Supp. 908, 918 (N.D.Ill.1996) (*citing Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2nd Cir.1993)). The Court must evaluate each party's motion on its own merits, resolving all factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Id.; Buttitta v. City of Chicago,* 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd,* 9 F.3d 1198 (7th Cir.1993).

## DISCUSSION

### I. *IDEA*

Count I of the cross-claim and third-party complaint alleges a violation of section 1413(a)(13) of the IDEA. *See* 20 U.S.C. § 1413(a)(13). The IDEA, 20 U.S.C. § 1401 *et seq.,* formerly known as the Education of the Handicapped Act, was enacted "to ensure that children with disabilities receive an education that is both appropriate and free." *Florence County School Dist. Four v. Carter By and Through Carter,* 510 U.S. 7, 13, 114 S.Ct. 361, 365, 126 L.Ed.2d 284 (1993) (*citing School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.,* 471 U.S. 359, 373, 105 S.Ct. 1996, 2004, 85 L.Ed.2d 385 (1985)); *see also* 20 U.S.C. § 1400(c). The Act provides federal funding to "assist State and local efforts to provide programs to meet the educational needs of children with disabilities in order to assure equal protection of the law." 20 U.S.C. § 1400(b)(9). In order to receive funding, participating states must comply with the procedures set forth in the IDEA that guarantee a reasonable probability of educational benefits and supportive services at public expense. 20 U.S.C. § 1412; *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley,* 458 U.S. 176, 188–89, 102 S.Ct. 3034, 3041–42, 73 L.Ed.2d 690 (1982).

The Act explicitly requires the submission of a State Plan which sets forth in detail the policies and procedures which the State will undertake to assure a free appropriate public education for all children with disabilities. *See* 20 U.S.C. § 1412; *Rowley,* 458 U.S. at 181, 102 S.Ct. at 3037–38. The present dispute involves section 1413(a)(13) of the Act which provides:

> Any State meeting the eligibility requirements set forth in section 1412 of this title and desiring to participate in the program under this subchapter shall submit to the Secretary, through its State educational agency, a State plan at such time, in such manner, and containing or accompanied by such information, as the Secretary deems necessary. Each such plan shall—
>
> > (13) set forth policies and procedures for developing and implementing interagency agreements between the State educational agency and other appropriate State and local agencies to—
> >
> > > (A) define the financial responsibility of each agency for providing children with disabilities and youth with free appropriate public education, and
> > >
> > > (B) resolve interagency disputes, including procedures under which local educational agencies may initiate proceedings under the agreement in order to secure reimbursement from other agencies or otherwise implement the provisions of the agreement;

20 U.S.C. § 1413(a)(13). Pursuant to this section, the burden is placed directly on the State, through its state educational agencies, to spell out with clarity and specificity which agency or agencies have the burden of paying for the education of children with disabilities. *See, e.g., Tennessee Department of Mental Health and Mental Retardation v. Doe,* 20 IDELR 347, 353, 1993 WL 328795 (Tenn.Ct.App.1993).

In the present case, the material facts are not in dispute. ISBE is an agency of the State of Illinois, and is responsible, *inter alia,* for making rules under which local school boards shall determine the eligibility of children to receive special education, 105 ILCS 5/14–8.02, and, more generally, for as-

717

suring compliance with the IDEA. DMHDD is the state agency responsible for developing and implementing State policies regarding the mentally ill and developmentally disabled, and is also responsible for complying with the IDEA. 20 ILCS 1705/1 *et seq.* Neither agency disputes that the State of Illinois must have in effect a State plan as required by section 1413(a)(13) of the IDEA. The State Agencies further admit that, at all times relevant to this lawsuit, neither ISBE nor DMHDD were parties to, nor had they developed and implemented, an interagency agreement as required by the Act.

The School District alleges that the lack of an interagency agreement as required by section 1413(a)(13) of the IDEA compelled it to litigate Devin's educational placement and, consequently, incur damages in the form of attorney's fees paid to Barbara Z. as a prevailing party in the underlying litigation. Before we address the merits of this claim, we must determine if the School District has standing to bring this suit. The State Agencies argue that all claims have been mooted by ISBE's previous offer to reimburse the School District for the costs of Devin's residential placement.

■■■ Article III of the United States Constitution confers jurisdiction on the federal courts only for live cases or controversies. *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir.1994). Each litigant must have a personal interest in the case at its inception and maintain that interest throughout the litigation. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980). "A case becomes moot when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit." *Holstein,* 29 F.3d at 1147 (*citing Banks v. National Collegiate Athletic Ass'n,* 977 F.2d 1081, 1085 (7th Cir.1992), *cert. denied,* 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247

(1993); *Alliance to End Repression v. City of Chicago,* 820 F.2d 873, 878 (7th Cir.1987)). "Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed.R.Civ.P. 12(b)(1), because he has no remaining stake." *Holstein,* 29 F.3d at 1147 (*quoting Rand v. Monsanto Co.,* 926 F.2d 596, 598 (7th Cir.1991) (citations omitted)).

■■ Here, the School District seeks three types of relief: (1) reimbursement for the costs of Devin's residential placement; (2) reimbursement for the attorney's fees it was required to pay to Barbara Z. as a prevailing part in the underlying litigation; and (3) injunctive and declaratory relief compelling the State Agencies to comply with the IDEA by developing and implementing the required intergovernmental agreement. Because the State Agencies have previously offered to reimburse the School District for the full costs of Devin's residential placement, this claim is moot and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

■■ We reach the same conclusion with regard to the School District's claim for injunctive relief. The School District alleges that the lack of an interagency agreement created uncertainty as to how residential placement would be funded. This uncertainty allegedly compelled the School District to litigate Devin's placement and subsequently incur damages in the form of attorney's fees paid to Barbara Z. as a prevailing party. After ISBE offered to fund residential placement, however, the lack of an interagency agreement was no longer a live issue so far as damages were concerned. Rather, all "damages" incurred after this point were independent of any interagency agreement or lack thereof. Accordingly, we also dismiss the School District's claims for injunctive relief as moot.[2]

**2.** We note that an interagency agreement now exists which would also moot this claim for injunctive relief. The School District contends that this agreement does not satisfy the requirements of the Act. This issue, however, is properly before our colleague Judge John A. Nordberg in an

earlier filed case, *see Board of Educ. Crete–Monee v. Illinois State Bd. of Educ. et al.,* No. 94 C 992 (N.D.Ill.), and, therefore, we decline to address it here. Moreover, we believe that federal courts should refrain from dictating how state agencies interact with one another. Such questions are

■ The only remaining claim is for damages in the form of the attorney's fees the School District paid Barbara Z. as a prevailing party in the underlying litigation. These alleged "damages" were incurred before ISBE offered to fund residential placement for Devin. Further, the State Agencies have not offered to reimburse the School District for these costs and continue to dispute their validity. Therefore, this claim is not moot. However, the State Agencies do argue that prudential limitations on standing preclude this claim because the School District "is not an intended plaintiff contemplated by Congress in passing IDEA" and, therefore, may not seek relief under the Act.

■ Ordinarily, "a litigant seeking relief in federal court must satisfy both constitutional and prudential limitations in order to have standing to sue." *Locals 666 and 780 of Intern. Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators of United States and Canada, AFL–CIO v. United States Dept. of Labor,* 760 F.2d 141, 143 (7th Cir.1985), *cert. denied,* 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). The plaintiff must first satisfy Article III by demonstrating a live case or controversy between herself and the defendant, *Crosetto v. State Bar of Wisconsin,* 12 F.3d 1396, 1403 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994), and then satisfy prudential limitations by showing that she is the litigant best suited to assert a particular claim. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). Although Congress may not remove Article III standing requirements, *Gladstone,* 441 U.S. at 100, 99 S.Ct. at 1608; *Warth v. Seldin,* 422 U.S. 490, 500–01, 95 S.Ct. 2197, 2205–07, 45 L.Ed.2d 343 (1975), it may override prudential limitations by statute. *Id.; see also North Shore Gas Co. v. E.P.A.,* 930 F.2d 1239, 1244 (7th Cir.1991) ("Congress can if it wants allow someone injured in fact by the violation of a statute to bring suit to redress the violation ... even if he wasn't an intend-

ed beneficiary of the statute in the usual sense ...").

■ In *Family & Children's Center, Inc. v. School City of Mishawaka,* 13 F.3d 1052 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994), the Seventh Circuit held that Congress has implicitly granted standing under the IDEA to the limits of Article III. *Id.* at 1061. "Where a statute grants standing to the full limits of Article III, courts 'lack authority to create prudential barriers to standing' in suits brought under that statute." *Id.* at 1060 (*quoting Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982)). Thus, a litigant under the IDEA must only satisfy the rather "undemanding" requirements of Article III. *Family & Children's Center, Inc.,* 13 F.3d at 1058. To satisfy Article III, a plaintiff must allege: (1) an immediate threat of injury; (2) fairly traceable to the defendant's conduct; that (3) a favorable federal court decision likely would redress or remedy. *Id.* (*citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–72, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982)).

■ The School District's claim undoubtedly satisfies Article III standing requirements. The School District alleges an immediate injury in the form of the attorney's fees it paid to Barbara Z. as a prevailing party. Additionally, the School District specifically alleges that this injury is directly traceable to the failure of the State Agencies to enter into an interagency agreement as required by the IDEA. But for this violation of the Act, the School District alleges that it would not have been forced to litigate Devin's educational placement. As to the third and final prong, there is no question that this alleged "injury" can be remedied by a favorable ruling from this Court in the form of a damages award. We therefore find that the School

---

better left to the political branches. *See Samuel A. Lewis, Director, Arizona Department of Corrections v. Fletcher Casey, Jr.,* —— U.S. ——, —— –––, 116 S.Ct. 2174, 2179–80, 135 L.Ed.2d 606

(1996) ("It is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.")

District has Article III standing to bring this claim under the IDEA.

█ The State Agencies next argue that the School District fails to state a cause of action because the IDEA only provides for reimbursement of attorney's fees to parents and guardians as prevailing parties. *See* 20 U.S.C. § 1415(e)(4)(B). Because the School District is neither a parent or guardian nor a prevailing party within the meaning of the Act, the State Agencies argue that it may not recover attorney's fees. We disagree. This argument misconstrues the relief sought in this case. The School District is not seeking to recover its own attorney's fees incurred in the underlying litigation, except as might otherwise be recoverable in its section 1983 claim, but instead, seeks the amount paid to Barbara Z. as damages caused by the State Agencies' violation of the IDEA.

█ With this in mind, we now turn to the merits of the School District's claim that it was injured by the State Agencies' violation of section 1413(a)(13) of the IDEA. Specifically, the School District alleges that the lack of an interagency agreement as required by section 1413(a)(13) of the IDEA compelled it to engage in costly and time-consuming administrative due process and judicial proceedings to address whether a residential placement was necessary to meet Devin's educational and mental health needs. In the absence of a plan containing the required interagency agreements, the School District argues that it is compelled to litigate the appropriate placement for a particular disabled student, since, in the absence of procedures for involving other agencies and securing reimbursement, a school district has no way of knowing whether it will solely bear the costs, both educational and non-educational, of the student's residential placement. Here, the School District was particularly concerned with the costs of 24–hour residential placement for non-educational reasons, i.e., Devin's special mental health needs.

The State Agencies, on the other hand, deny any causal link between the lack of an interagency agreement and the School District's alleged damages. They maintain that the lack of an interagency agreement is a collateral issue in this case. The State Agencies further argue that the School District's recalcitrance toward Barbara Z.'s request for residential placement was the sole motivation behind this litigation and any damages the School District may have incurred.

We think both arguments go too far. It is more plausible that both factors—the lack of an agreement and the School District's position that residential placement was inappropriate for Devin—gave rise to this litigation and, consequently, the School District's damages. We address each in turn.

Under the state scheme as it existed during the underlying litigation, local school districts could request state agency participation in the placement process. *See* Ill.Admin.Code tit. 23 § 226.420(c). Significantly, however, the state agencies have no legal obligation to participate. In addition, the School Code of Illinois contains procedures for the evaluation and placement of disabled students as well as administrative due process hearings. *See* 105 ILCS 5/14–8.02. However, Level I Hearing Officers and Level II Review Officers have no authority to join state agencies as parties at the administrative level. Thus, prior to administrative review in the district court, a local school district has no means to require participation of state agencies in the placement process and, more importantly, no established means to apportion placement funding under the IDEA.

The plain language of section 1413(a)(13) of the IDEA indicates that it was enacted to prevent just the type of dispute before us today. The Act explicitly requires an agreement to "define the financial responsibility of each agency for providing children with disabilities and youth with free appropriate public education" and to "resolve interagency disputes, including procedures under which local educational agencies may initiate proceedings under the agreement in order to secure reimbursement from other agencies or otherwise implement the provisions of the agreement." 20 U.S.C. § 1413(a)(13).

In the present case, the School District had legitimate concerns over funding for residential placement prior to ISBE's offer of

reimbursement. Moreover, that offer came rather late in the game, i.e., almost a year after the first administrative proceeding and less than a month before our ruling on the motion for a preliminary injunction. We have no doubt that an interagency agreement as required by section 1413(a)(13) might have obviated the problem and need for this litigation altogether.

Nevertheless, the lack of an interagency agreement was not the only cause of this litigation. A contributing cause was the School District's own position that residential placement was inappropriate for Devin. This position, however, was not an unreasonable one. On the contrary, both the Level I Hearing Officer and the Level II Review Officer concurred with the School District's recommendation. More importantly, it was also the position the School District maintained throughout the course of this litigation even after ISBE offered full reimbursement for the costs of residential placement. We find it inconceivable that the School District would have prolonged this litigation through both administrative and judicial proceedings unless it truly believed residential placement was inappropriate for Devin.

 We therefore conclude that both the School District's position that residential placement was inappropriate for Devin and the lack of an interagency agreement were contributing causes of this litigation and the School District's damages before August 24, 1994. Any damages incurred after ISBE offered to fund residential placement resulted solely from the School District's own litigation position for which it may not recover. We must now determine how to apportion the damages incurred prior to August 24, 1994 based on our conclusion that all parties, ISBE, DMHDD, and the School District, were responsible for this litigation.

The Illinois Appellate Court addressed a similar issue in *Community Consol. School Dist. No. 54 v. Illinois State Bd. of Education,* 216 Ill.App.3d 90, 159 Ill.Dec. 581, 576 N.E.2d 250 (Ill.App.Ct.1991).[3] In that case, the local school district (the "District") rec-

ommended that Patrick S., a handicapped child of primary school age, be placed in a restrictive special education class. Similar to the instant case, Patrick's parents disagreed with the placement believing that Patrick's special education needs required residential placement. A Level I Hearing Officer subsequently agreed and ordered that Patrick receive residential placement funded by the District. A Level II Review Officer affirmed that decision.

After losing at both administrative levels, the District filed a declaratory action in the Circuit Court of Cook County against ISBE and DMHDD seeking judicial review of the Level II decision or, in the alternative, a declaration of funding responsibility of ISBE and DMHDD if the placement decisions were upheld. Patrick's parents subsequently filed an emergency motion to implement residential placement. Circuit Court Judge Marjan P. Staniec granted the motion and ordered the District to pay tuition and ISBE and DMHDD to share the costs of room and board. Judge Staniec also ordered the District to pay the attorney's fees of the parents as prevailing parties. The District then moved to allocate attorney's fees to ISBE and DMHDD in whole or in part. Judge Staniec, however, refused to apportion fees finding that the District had unreasonably prolonged the proceedings leading to Patrick's placement.

On appeal, the District argued that it only disputed the necessity of Patrick's residential placement because of ISBE's and DMHDD's refusal to accept responsibility for the cost thereof. The Court disagreed and found both parties at fault. "[T]he School District was responsible for this litigation in light of the fact that it challenged Patrick's need for residential placement. Furthermore, DMHDD refused to assume financial responsibility for the cost of residential placement thereby compelling the School District to continue to litigate through administrative and judicial appeals." *Community Consol. School Dist. No. 54,* 216 Ill.App.3d at 96, 159 Ill.Dec. 581, 576 N.E.2d 250. The Court

---

3. This case was actually brought under the Education of the Handicapped Act, the predecessor of the IDEA.

therefore determined that responsibility for fees should be apportioned. *Id.* at 94, 159 Ill.Dec. 581, 576 N.E.2d 250. "Given the interrelationship between their responsibilities with respect to Patrick's residential placement and focusing on the relative degree of culpability among the agencies, we conclude that the School District, ISBE, and DMHDD, are each equally responsible for the attorneys fees." *Id.* at 96, 159 Ill.Dec. 581, 576 N.E.2d 250.

We find the reasoning in *Community Consol. School Dist. No. 54* compelling in the instant case. The attorney's fees in question were incurred both as a result of the State Agencies' failure to comply with the IDEA and the School District's opposition to Devin's residential placement. Considering the relative fault of each party, equal apportionment is a fair and equitable division of the damages incurred before August 24, 1994. Accordingly, we grant the School District's motion for summary judgement on Count I of the cross-claim and third-party complaint and deny the State Agencies' cross-motion. We hereby order that ISBE and DMHDD shall each reimburse the School District for one third (⅓) of the attorney's fees incurred by Barbara Z. prior to August 24, 1994 when ISBE offered to fund residential placement.

## II. *Rehabilitation Act of 1973*

 Count II of the cross-claim alleges that the lack of an interagency agreement as required by section 1413(a)(13) of the IDEA violates section 504 of the Rehabilitation Act of 1973, which states in relevant part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). "[T]he basic purpose of § 504 ... is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudicial attitudes or ignorance of others." *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987), *rehearing denied,* 481 U.S. 1024, 107 S.Ct.

1913, 95 L.Ed.2d 519 (1987); *see also Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (§ 504 protects handicapped persons of all ages from discrimination in a variety of programs and activities receiving federal financial assistance). A plaintiff basing her claim upon the Act must establish that (1) she is an individual with handicaps; (2) she is otherwise qualified; (3) she is excluded from programs solely because of the handicap; and (4) the programs from which she is excluded are operated from an agency that is federally funded. *Byrne v. Board of Educ., School of West Allis–West Milwaukee*, 979 F.2d 560, 563 (7th Cir.1992) (*citing Taub v. Frank*, 957 F.2d 8, 10 (1st Cir.1992); *Gilbert v. Frank*, 949 F.2d 637, 640 (2nd Cir.1991)).

 In the present case, the School district cites no authority in support of its claim that it may recover attorney's fees under the Rehabilitation Act for a violation of the IDEA. In fact, the School District does not address this claim at all in its briefs beyond summarily concluding that it is entitled to summary judgment. Likewise, we see no reason to discuss it in detail here. The Rehabilitation Act protects disabled persons, not school districts. The School District may not bring a claim under the Rehabilitation Act for a violation of the IDEA. Accordingly, we grant the State Agencies' motion for summary judgment as to Count II of the cross-claim and deny the School District's cross-motion.

## III. *42 U.S.C. § 1983*

Count III of the cross-claim and Count II of the third-party complaint allege a violation of 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979).

■ The School District's claim under section 1983 is entirely duplicative of its prior claim that the State Agencies have violated section 1413(a)(13) of the IDEA. The School District argues that the IDEA creates substantive federal rights which it can enforce through section 1983. The State Agencies respond that the School District is not a proper plaintiff under section 1983.[4] We agree.

It is well established that certain political subdivisions of a state are "persons" which can be held liable under section 1983. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The issue before the court, however, is whether a political subdivision of a state, such as the School District, can sue (as opposed to being sued) under section 1983. The School District is obviously not a "citizen of the United States." We must therefore decide whether the School District is an "other person" within the meaning of the statute. We hold that it is not.

Neither the United States Supreme Court nor the Seventh Circuit has directly addressed the issue of whether a school district may sue an agency of its creating state under section 1983. The School District cites *Santiago Collazo v. Franqui Acosta*, 721 F.Supp. 385 (D.Puerto Rico 1989) in which the court held that a municipality was an "other person" entitled to bring suit under section 1983. *Id.* at 393. In reaching this conclusion, the court reasoned that, "[i]n enacting § 1983, Congress surely could not have intended the

word 'person' to have two different meanings—if it wanted to include municipalities as defendants but not as plaintiffs, it would have used different language to describe the potential parties in each group." *Id.* (citing *South Macomb Disposal Authority v. Washington Tp.*, 790 F.2d 500, 503 (6th Cir.1986)).

■ We respectfully disagree. This reasoning ignores the underlying purpose of the statute: the vindication of individual interests against state action. *See Com. of Pa. v. Porter*, 659 F.2d 306, 314 and 327 n. 3 (3d Cir.1981), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982). In *Monell*, the Supreme Court explicitly recognized that section 1983 was enacted as a civil remedy for all individual citizens and people whose constitutional rights have been deprived under color of state law. *See Monell*, 436 U.S. at 683 and 685 n. 45, 98 S.Ct. at 2032 and 2033 n. 45. Allowing a state or one of its political subdivisions to bring suit under section 1983 effectively "turns the statute on its head." *See Porter*, 659 F.2d at 315 n. 3. Absent Supreme Court or Seventh Circuit precedent to the contrary, we conclude that the School District is not an "other person" that can sue (as opposed to being sued) within the meaning of section 1983. *See School Dist. of Philadelphia v. Pennsylvania Milk Marketing Bd.*, 877 F.Supp. 245, 251 n. 3. (E.D.Pa.1995) (holding that school district is not "other person" under section 1983) (citing *Housing Authority of Kaw Tribe of Indians of Oklahoma v. City of Ponca City*, 952 F.2d 1183, 1192 (10th Cir. 1991), *cert. denied*, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992); *United States v. State of Ala.*, 791 F.2d 1450, 1455 (11th Cir.1986), *rehearing denied*, 796 F.2d 1478 (11th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987); *Porter*, 659 F.2d at 327 n. 3 (concurring and dissenting opinion).[5]

4. The State Agencies also argue that they are immune from suit under section 1983 pursuant to the Eleventh Amendment. Because we find that the School District is not a "person" who can sue (as opposed to being sued) under section 1983, we do not address the issue of Eleventh Amendment immunity.

5. This interpretation of section 1983 also tacks the prevailing view that a political subdivision of

a state may not bring a constitutional claim against its creating state. *See, e.g., City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 233–34 (9th Cir.1980), *cert. denied*, 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980); *Randolph County v. Alabama Power Co.*, 784 F.2d 1067 (11th Cir.1986), *modified*, 798 F.2d 425 (11th Cir.1986), *cert. denied*, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d

Accordingly, we grant the State Agencies' motion for summary judgment on Count III of the cross-claim and Count II of the third-party complaint and deny the School District's cross-motion.

### CONCLUSION

For all of the foregoing reasons, the cross-motions for summary judgment are granted in part and denied in part as follows: (1) We grant the School District's motion on Count I of the First Amended Cross–Claim and First Amended Third–Party Complaint and deny the State Agencies' cross-motion. We hereby order that ISBE and DMHDD shall each reimburse the School District for one third (⅓) of the attorney's fees incurred by Barbara Z. prior to August 24, 1994. If the parties are unable to agree on the total amount of attorney's fees and costs incurred by Barbara Z. prior to August 24, 1994, the parties shall appear before this Court for a hearing to determine that amount.

(2) We grant the State Agencies' motion on Counts II and III of the First Amended Cross–Claim and Count II of the First Amended Third–Party Complaint and deny the School District's cross-motion. We hereby dismiss these counts.

It is so ordered.

833 (1987); *City of Trenton v. State of New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933); *but cf. Santiago*, 721 F.Supp. at 393 (*citing Rogers v. Brockette*, 588 F.2d 1057 (5th Cir.1979), *cert. denied*, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979); *San Diego Unified Port Dist. v. Gianturco*, 457 F.Supp. 283 (S.D.Cal.1978), *aff'd*, 651 F.2d 1306 (9th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Board of Ed. of Central School Dist. No. 1 v. Allen*, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 449 U.S. 1039, 1041, 101 S.Ct. 619, 620–21, 66 L.Ed.2d 502 (1980) (White, J., dissenting from denial of cert.)).