Jane M. ORIENT, M.D., Plaintiff,
in propria persona,

v.

LINUS PAULING INSTITUTE OF SCI-
ENCE AND MEDICINE, Stephen Law-
son, Linus Pauling, Jr., Emile Zucker-
kandl, Alejandro Zaffaroni, and G.
Richard Hicks, Defendants.

No. CIV 96–134 TUC ACM.

United States District Court,
D. Arizona.

Aug. 19, 1996.

Jane M. Orient, M.D., Tucson, AZ, plaintiff, pro se.

Philip R. Higdon, Diane Madenci, Brown & Bain, Tucson, AZ, Daniel Johnson, Jr., Kathleen M. Hallinan, Barbara E. Tanzillo, Cooley Godward Castro Huddleson & Tatum, Palo Alto, CA, for Defendants.

## ORDER

MARQUEZ, Senior District Judge.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint in accordance with Rule 12(b) of the Federal Rules of Civil Procedure on the following grounds: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue and failure of Plaintiff to state a claim upon which relief can be granted. For reasons stated below, the Court grants Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(h)(3) because the Plaintiff lacks standing to bring these causes of action. Accordingly, other grounds for dismissal need not be reached.

### BACKGROUND

Plaintiff Jane M. Orient, M.D., appearing pro se, brings this action for tortious interference with access to public information and breach of fiduciary duty against the Linus Pauling Institute of Science and Medicine ("LPI") and its present and former officers, directors and trustees. The claims center on medical research data generated by LPI between 1973 and 1978.

LPI is a nonprofit research institute organized in 1973 under the laws of California, and founded to conduct biological and medical research for the enhancement of the quality of human life. LPI's research has been partially funded through grants from the federal government and partially through donations from the public including corporations and individuals. LPI has solicited donations from all over the world since 1977.[1]

Dr. Orient is a physician in private practice specializing in internal medicine. The doctor resides and practices medicine in Arizona. Her only apparent connection to LPI are donations she made to the institute in 1995–96 totaling $30, $10 in 1995 and $20 in 1996.

On the basis of her donations to LPI and out of professional and personal interest, Dr. Orient requested the opportunity to copy and review research data allegedly possessed by LPI pertaining to several serious health conditions. Her request for access to the research was denied on the basis that the requested data was "unavailable." Other scientists allegedly making similar requests were also denied access.

1. The exact number of solicitations made by LPI is in dispute. Plaintiff claims that the institute solicited funds from 50,000 Arizonans in 1977–78 and received approximately 1,000 donations while LPI maintains that it solicited funds from between 33,000 and 47,000 individuals worldwide and annually has received approximately 100 donations from Arizonans. This factual dispute is not relevant, however, to this Order.

Out of a fear that the particular research data was on the verge of destruction, Dr. Orient filed the Complaint against LPI and Stephen Lawson,[2] Linus Pauling Jr., Emile Zuckerkandl, Alejandro Zaffaroni, and G. Richard Hicks in their official capacities as current and former directors, officers or trustees of LPI (collectively "Defendants"). Count one asks this Court to issue an injunction preventing the destruction of the research data. In asking for injunctive relief, Plaintiff alleges that the Defendants wrongly interfered with her right of access to the research. Count two seeks monetary damages from Defendants for breaches of fiduciary duties owed contributors.

## DISCUSSION

### I. Legal Standards

 Federal subject matter jurisdiction is a threshold issue that goes to the power of the court to hear the case, so subject matter jurisdiction must exist at the time the action commences. *See Morongo Band of Mission Indians v. California State Board of Equalization,* 858 F.2d 1376 (9th Cir.1988), *cert. denied, Miller v. Morongo Band of Mission Indians,* 488 U.S. 1006, 102 L.Ed.2d 779, 109 S.Ct. 787 (1989). Rule 12(b)(1) permits a party to seek dismissal of an action for lack of subject matter jurisdiction. FED.R.CIV.P. 12(b)(1). The court shall dismiss the action "[w]herever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." FED. R.CIV.P. 12(h)(3). Therefore, a 12(b)(1) motion must be decided before other motions, as they will become moot if dismissal is granted. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (1990).

 In adjudicating a 12(b)(1) motion, a court is not limited to the pleadings, and may properly consider extrinsic evidence. *Farr v. United States,* 990 F.2d 451, 454 (9th Cir.), *cert. denied,* 510 U.S. 1023, 126 L.Ed.2d 592, 114 S.Ct. 634 (1993). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes of Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir.1989). Initially, there is a presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise. *Id.* Therefore, although the Complaint is to be construed liberally, argumentative inferences favorable to the pleader will not be drawn. *Id.*

### II. Standing

 In order to bring suit in a federal court, a Plaintiff must establish standing under the "case or controversy" requirement of Article III to the U.S. Constitution. *SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 407, 92 S.Ct. 577, 580, 30 L.Ed.2d 560, 564 (1972). Standing is an essential element of federal-court subject matter jurisdiction. *South Lake Tahoe v. California Tahoe,* 625 F.2d 231, 233 (9th Cir.), *cert. denied,* 449 U.S. 1039, 66 L.Ed.2d 502, 101 S.Ct. 619 (1980). Standing involves both constitutional requirements derived from Article III and judicially created prudential limitations. *U.S. v. Mindel,* 80 F.3d 394, 396 (9th Cir. 1996).

#### A. *Constitutional Requirements*

 The "irreducible constitutional minimum of standing" consists of three general requirements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). First, the plaintiff must "clearly demonstrate that he has suffered an 'injury in fact'." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990). The injury must be "an invasion of a legally protected interest," which is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136 (1992); *Whitmore,* 495 U.S. at 155, 110 S.Ct. at 1723. Second, the plaintiff must show the injury "fairly can be traced to the challenged action of the defendant, and not an injury that results

---

**2.** In a separate motion, Plaintiff asks this court to issue sanctions under Rule 11 of the Federal Rules of Civil Procedure against Defendant Lawson on the basis of allegedly misleading statements made in his declarations filed with this

Court. Having been satisfied that the declarations were submitted in good faith and made to the best of his belief after a reasonable inquiry, the Court feels that sanctions are not called for at this time. FED.R.CIV.P. 11(b).

from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, the plaintiff must demonstrate that the injury is "likely to be redressed by a favorable decision." *Id.; see Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136.

■ In the present case, Plaintiff argues that she has standing to sue over the Defendants' "improper handling of their research assets" by virtue of her "direct funding" of the Institute's medical research. Opp. at 6–7. Plaintiff, however, fails to provide and the Court has not found any statutes, cases or other bases in law support such a proposition. Funding research does not automatically confer a legally protected interest in that organization's assets on a donor, absent independent rights such as those that might arise in a contractual relationship.

Plaintiff also argues that all of LPI's research data is "public property" due to the nonprofit organization's receipt of government funding and tax-exempt status. Plaintiff further contends that, as a member of the public, her professional interest in the "public property" provides her with standing to sue over its use. Opp. at 7. In support, Plaintiff points to a trend recognizing that private citizens with professional or personal interests in environmental issues may have standing to sue over them in federal court. Opp. at 6.

Plaintiff's reasoning fails for several reasons. First, Plaintiffs initiate environmental suits under acts, such as the Endangered Species Act, which provide for citizen suits; however, in the case at bar, there is no such statutory provision providing Plaintiff with a cause of action. Second, contrary to Plaintiff's argument that all assets of Defendant LPI are "public property," federal law specifically permits nonprofit organizations to retain title to their inventions along with the patent rights. *See, e.g.,* 35 U.S.C. § 202(a) (1996). Last, as Defendants argue, there is no basis in law for a "vocational nexus" providing anyone with a professional interest in research a right to sue over its use.

Since Plaintiff has no legally protected interest in the research data compiled by Defendant LPI, Plaintiff could not have suffered an "injury in fact" from Defendants action. Thus, Plaintiff fails to satisfy the first element of the constitutional standing inquiry. Having failed to establish an injury in fact, it logically follows that Plaintiff also cannot meet the remaining two elements of the constitutional inquiry, causation and redressability.

### B. *Prudential Limitations*

■ In addition to the aforementioned theories, Plaintiff seemingly maintains that she has standing under § 501(c)(3) of the Internal Revenue Code based on Defendant LPI's tax-exempt status. To establish standing under a federal statute, a party must satisfy judicially created prudential limitations. *Mindel*, 80 F.3d at 397. One requires the asserted interest to fall "within the zone of interests protected by the law invoked." *Id.* at 397 (citing *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). Under the zone of interests test, a plaintiff lacks "a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987).

The inquiry in the present case is whether Plaintiff's interests fall within the zone of interests created by I.R.C. § 501(c)(3). Nowhere does the text of the statute suggest that Congress intended the tax-exempt status of an organization to provide private citizens or donors of funds with a right of access to that organization's research. Also, absent is any mention of fiduciary duties owed by an organization and its directors. *See* I.R.C. § 501 (1996); Code of Fed.Reg. § 1.501 *et seq.* (1995). Nothing in the section's extensive legislative history supports such a reading of Congressional intent either. *See* H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 4075; H.R.Rep. No. 413, 91st Cong., 1st Sess. (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645; S.Rep. No. 1622, 83rd Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621, 4699.

Rather, Congress likely enacted the tax-exemption with the intent of benefitting those corporations wishing to pursue charitable and scientific ventures at the expense of pecuniary gain. *Id.* Consequently, Plaintiff does not have standing under I.R.C. § 501 to challenge the use of the research data since her interests fall outside those protected by the statute.

### CONCLUSION

Standing is a threshold question of subject matter jurisdiction that must be satisfied before a plaintiff may bring a cause of action in federal court. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136. A court may not create jurisdiction by curing deficient standing allegations. *Whitmore,* 495 U.S. at 155–56, 110 S.Ct. at 1723. In the case at bar, Plaintiff lacks standing to assert any of her claims under both constitutional and statutory analysis. Therefore, the complaint should be dismissed for lack of subject matter jurisdiction. Since Plaintiff lacks subject matter jurisdiction under Rule 12(b)(1), the Court need not address the merits of the case or the other grounds for dismissal.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss filed March 13, 1996 is GRANTED.

**IT IS FURTHER ORDERED** that the Defendants' request for sanctions in their Motion to Dismiss filed March 13, 1996 is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Rule 11 Sanctions filed May 28, 1996 is DENIED.

**IT IS FURTHER ORDERED** dismissing this case with prejudice; the Clerk of the Court shall enter judgment against Plaintiff and for Defendants, Plaintiff to take nothing by way of this action.