Donna LIPPOLDT, individually, Operation Save America, an unincorporated association, and Phillip Benham, individually Plaintiffs,

v.

CITY OF WICHITA, KANSAS, a political subdivision of the state of Kansas, Deputy Chief Stephen Cole, in his official and individual capacity as an agent/employee of City of Wichita, Kansas, a political subdivision of the state of Kansas, Beth Harlenske, in her official and individual capacity as an agent/employee of City of Wichita, Kansas, a political subdivision of the state of Kansas Defendants.

No. 01–1226–JTM.

United States District Court,
D. Kansas.

May 28, 2003.

Brian R. Chavez-Ochoa, Chavez-Ochoa Law Offices, Valley Springs, CA, Donald A. McKinney, Wichita, KS, Frederick H. Nelson, American Liberties Institute, Orlando, FL, Richard A. Macias, Wichita, KS, for Plaintiffs.

Elizabeth Harlenske, Gary E. Rebenstorf, Jay C. Hinkel, Mary A. McDonald, Michael L. North, City of Wichita, Law Department, Wichita, KS, for Defendants.

Emily B. Metzger, Office of U.S. Attorney, Wichita, KS, for United States.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter comes before the court on the defendants' motion for summary judgment (Dkt. No. 92). Plaintiffs bring this action asserting violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution and under federal law, particularly 42 U.S.C. § 1983, and §§ 1, 2, 3, 7, 9, and 11 of the Kansas Bill of Rights.[1] On July 16, 2001, the court granted the plaintiffs' motion for a temporary restraining order enjoining the defendants from enforcing their parade ordinance, Chapter 3.13 (parade ordinance) and the plaintiffs' motion for waiver of security bond (Dkt. No. 21). At that time, the court denied the plaintiffs' motion for a temporary restraining order enjoining the defendants from enforcing their municipal order dated June 3, 2001 (municipal order) (Dkt. No. 21). On September 28, 2001, the court denied defendants Stephen Cole and Elizabeth Harlenske's motion to dismiss plaintiffs' 42 U.S.C. § 1983 claims as they pertain to the moving defendants in their individual capacities (Dkt. No. 38). In the same order, the court granted the defendants' motion for dismissal of the plaintiffs' pendant state law claims for damages (Dkt. No. 38). However, the court specified that the ruling did not impact plaintiffs' right to seek prospective relief nor did it impact plaintiffs' ability to pursue a damage claim under § 1983. Defendants now have filed for summary judgment against all plaintiffs on all counts. The motion is fully briefed and ripe for determination. **For the reasons stated below, the court grants the defendants' summary judgment motion in part and denies the motion in part.**

1. Plaintiffs assert five major theories of recovery. The first theory of recovery concerns freedom of speech and assembly, based on the First Amendment to the United States Constitution and §§ 3 and 11 of the Kansas Bill of Rights (counts I and VII); this theory involves the parade ordinance. The second theory concerns equal protection and due process, based on the Fourth and Fourteenth Amendments to the United States Constitution and § 1 of the Kansas Bill of Rights (counts II and VI); this theory involves both the parade ordinance and municipal order. The third theory concerns free exercise of religion, based on the First Amendment to the United States Constitution and § 7 of the Kansas Bill of Rights (counts III and VIII); this theory involves the parade ordinance. The fourth theory concerns the privileges and immunities clause, based on the Fourteenth Amendment, Art. IV of the United States Constitution, and § 2 of the Kansas Bill of Rights (counts IV and IX); this theory involves the municipal order. The fifth theory of recovery is unreasonable searches/seizures and unreasonable bail, based on the Fourth and Eighth Amendments to the United States Constitution and § 9 of the Kansas Bill of Rights (counts V and X); this theory involves the municipal order.

## I. Statement of Facts

Generally, plaintiff Operation Save America ("OSA") is a group of individuals who engage in speech activities related to the nature of abortion and abortion alternatives directed at those seeking to have or perform abortions and to those persons escorting others to have abortions as well as the general public. Plaintiffs Lippoldt and Benham are affiliated with OSA. Defendants Deputy Chief Steven Cole and Beth Harlenske are employees and agents of defendant City of Wichita, Kansas.

This action stems from plaintiffs' desire to convey their speech from public sidewalks and right-of-ways in Wichita, Kansas through parade activities. On July 6, 2001, plaintiffs submitted parade permit applications to the City for planned parades beginning on July 17, 2001 with the last parade on July 21, 2001. These events coincided with the 10th anniversary of the 1991 "Summer of Mercy," in which activists from around the country came to Wichita to engage in anti-abortion protests and other events, activities which attracted extensive media coverage throughout the nation. The defendants denied plaintiffs' parade permit applications.

The following are the facts the court finds uncontroverted and relevant.

Operation Save America—Wichita, ("OSA–W") has no identifiable, permanent members. The members consist of volunteers who come and go. The people who participate can change at each event or activity. It is a loosely-knit group of persons sharing an interest in stopping abortion, who from time to time gather and engage in planning and or conducting anti-abortion events and protests.

Mrs. Lippoldt and her husband commenced calling themselves OSA–W in 2000, for identification purposes. The activities in which Mrs. Lippoldt, her husband and volunteers participate have been represented as being undertaken and sponsored by OSA–W. OSA–W includes lay people of like minds, as well as pastors planning anti-abortion events. There is no specific membership designation.

Phillip Benham described himself as the Director of OSA. However, he did not know the organizational structure of OSA. Mr. Benham described OSA as a "non-profit". Mr. Benham did not know if it was an unincorporated association.

Phillip Benham participated in scheduled events including a pastors' breakfast, sidewalk counseling, praying and preaching in connection with anti-abortion beliefs. Phillip Benham participated in a parade which went to a park by the river. This was the first parade permit requested. A permit was issued by the city allowing it to occur. Over a thousand people attended that parade.

Mrs. Lippoldt participated in other planned events including a concert on the night of July 13, an all night prayer service on July 14, a solemn assembly on July 15, and a parade from downtown Wichita to A. Price Woodard Park. The parade application was approved.

The participants wanting to participate in the Summer of Mercy Renewal were required to sign a pledge of nonviolence, in order to be admitted to the night rallies. Mr. and Mrs. Lippoldt both signed this pledge.

Mrs. Lippoldt was not arrested at any time for any reason during the events encompassing the Summer of Mercy Renewal 2001.[2] Phillip Benham was not ar-

---

2. Generally, the Summer of Mercy Renewal consisted of a number of activities designed to protest abortion including a Christian concert, an all night-prayer service, an assembly, and parades. The protests took place throughout the city of Wichita from July 13, 2001 to July 21, 2001. The Summer of Mercy Renewal commemorated the ten-year anniversary of the Summer of Mercy anti-abortion protests led by Operation Rescue in 1991.

rested at any time for any reason during the events encompassing the Summer of Mercy Renewal 2001.

During the events of the Summer of Mercy Renewal 2001, there were two arrests of people that support abortion rights (pro-choice), for offenses against people who were against abortion (pro-life). Those arrested were not associated with OSA. The only pro-life people arrested during the event were two pastors for the crime of obstruction and three women who were charged with disturbing a worship service at Dr. Tiller's church. Two pro-choice people were arrested and charged with battery, during the events that encompassed the Summer of Mercy Renewal. These crimes occurred at the Clinic. Both people were later convicted.

Although OSA–W has talked about having future parades, there are no specific plans to host a parade. However, plaintiffs assert that Donna Lippoldt testified that it is "very likely" that both the organization OSA–W and she personally will request parade permits in the future. Plaintiffs also assert that Donna Lippoldt testified that the leadership of OSA–W had submitted an additional parade permit application for October 2001 and additional information related to future parades would be forthcoming.

The parade applications that were submitted for approval were in the organization name of either OSA–W, or OSA—National, with the applicant name listed as Donna Lippoldt. Plaintiffs also assert that Donna Lippoldt testified that she signed the applications "above the line that states applicant information . . . ." The Municipal Court Bond Order was signed by Judge Connolly, Administrative Judge for the Municipal Court, City of Wichita.

OSA promoted its "Summer of Mercy Renewal" activities by its brochure titled "Jesus is the Standard" which included references to the organization's phone number and web site among other information.

The procedure for obtaining Parade Permits is found at Chapter 3.13 of the City Code of the City of Wichita. City Officials involved in the application of Parade Permit review process did so after receiving advise and counsel of the City legal staff.

Chapter 3.13 provides, in part:

*Section 3.13.030 Application.*

A person seeking the issuance of a parade permit shall file an application with the city treasurer's office on forms provided by the city treasurer.

(1) Filing. An application for a parade permit shall be filed with the city treasurer not less than ten days before the date on which it is proposed to conduct the parade and no parade permit shall be issued for any date prior to ten days after the application is filed. The application shall be signed by the applicant.

(2) Contents. The application for a parade permit shall set forth the following information:

(a) The name, address and telephone number of the person seeking to conduct such parade;

(b) If the parade is proposed to be conducted for, on behalf of, or by an organization, the name, address and telephone number of the headquarters of the organization and the name, address and telephone number of the local authorized representative of such organization responsible for the conduct of the parade;

(c) The name, address and telephone number of the person who will be the parade chairman and who will be responsible for its conduct;

(d) The date when the parade is to be conducted;

(e) The route to be traveled, the starting point and termination point;

(f) The approximate number of persons, animals and vehicles which will constitute such parade, together with the specific classification of such animals and specific description of such vehicles;

(g) The hours when such parade will start and terminate;

(h) The location of any assembly areas of such parade and the time in which units of the parade will begin to assemble at any such assembly area or areas;

(i) The purpose of the parade. (Ord. No. 38–112 § 3).

### Section 3.13.040    Application fee.

A fee of fifteen dollars to cover the expenses incident to processing shall be paid by the person applying for the permit at the time of the filing of the application. (Ord. No. 38–112 § 4).

### Section 3.13.050    Standards for issuance.

Upon receipt of a properly completed application form and upon payment of the fee as above provided, the city treasurer shall issue a permit as provided for hereunder. Provided, however, that no parade permit shall be issued for the following or under the following conditions:

(1) When the parade is to be held for the sole purpose of advertising any product, goods or event designed for profit. Provided, however, that this prohibition shall not apply to signs identifying organizations or sponsors furnishing or sponsoring floats or transportation for any given parade;

(2) For parades to be conducted between the hours of seven a.m. and eight-thirty a.m. and four p.m. and five-thirty p.m. except on Saturdays, Sundays and legal holidays;

(3) For parades to be held on any portion of highways U.S. 54, 1–235 and 1–135;

(4) When the designated route for the parade would include more than two of the following streets between Central Avenue and Lewis Street: Washington Street, St. Francis Street, Emporia Street, Topeka Street, Broadway Avenue, Main Street, Market Street or Waco Street;

(5) When the designated route for the parade would include more than two of the following streets between Washington Street and the Arkansas River: Central Avenue, 2nd Street, 1st Street, Douglas Avenue, William Street, Maple Street and Waterman Street;

(6) When the designated route for the parade would require the closing of more than one of the following bridges to normal vehicular traffic: 2nd Street Bridge at 2nd Street and McLean Boulevard, the Maple Street Bridge at McLean Boulevard and Maple Street or the Douglas Avenue Bridge at 300 West Douglas. (Ord. No. 38–112 § 5)

### Section 3.13.060    Notice to other city officials.

Immediately upon the issuance of a parade permit, the city treasurer shall send a copy thereof to the following:

(1) The city manager;

(2) The chief of police;

(3) The fire chief;

(4) The director of the metropolitan transit authority;

(5) The director of emergency communications;

(6) The director of operations and maintenance;

(7) The director of engineering;

(8) The director of parks (when proposed route cuts through or is adjacent to a park). (Ord. No. 38–112 § 6)

### Section 3.13.070    Contents of permit.

Each parade permit shall state the following information:

(1) Date of the parade;

(2) Starting time and termination time of the parade;

(3) The portions of the streets to be traversed that may be occupied by the parade;

(4) The estimated number of persons, animals and motor vehicles that will be in the parade. (Ord. No. 38–112 § 7)

## II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Analysis and Discussion

The defendants move for summary judgment on several grounds, including 1) that plaintiff OSA is not a "person" entitled to relief under § 1983; 2) the plaintiffs lack standing to bring these claims; 3) the plaintiffs' facial challenge to the parade ordinance fails; 4) that no municipal liability exists.[3]

### A. Status of unincorporated associations under § 1983

The defendants argue that plaintiff OSA, an unincorporated association, is not a "person" entitled to relief under 42 U.S.C. § 1983. The plaintiffs dispute this argument on the grounds: 1) that there is a materially disputed fact concerning whether OSA is an unincorporated association; 2) the defendants' motion is untimely; 3) that the plaintiffs' claims are not "all by the vehicle of an action brought under 42 U.S.C. § 1983."

Initially, the plaintiffs dispute the defendants' claim that OSA is an unincorporated association contending this assertion is based upon a disputed material fact. Plaintiffs' argument is without merit as

---

**3.** In the defendants' motion for summary judgment, they also move for relief based on the doctrine of qualified immunity. (Defs.' Mot. at 16). In the defendants' reply, they state "[d]efendants now agree that should the Court's analyses reach this level, the facts available from the record on the issue of qualified immunity in its traditional form present a triable issue." (Defs.' Reply at 7). Thus, the court will not examine this basis for relief.

their own complaint asserts "plaintiff, Operation Save America, an unincorporated association, is and was at all times relevant to this cause, an unincorporated association." (Pls.' Complaint ¶ 7). In the court's order of June 16, 2001, plaintiff OSA was also described as an unincorporated association without objection. No evidence contradicts this finding.

The plaintiffs also assert that the defendants' argument is untimely, because pursuant to the scheduling order, any motions regarding the "propriety of the parties ... shall be filed by November 30, 2001." However, this argument also fails. The defendants are not objecting to the status of OSA as a party, rather they are challenging OSA's right as an unincorporated association to claim relief under § 1983.

The defendants assert that "the plaintiffs seek redress from this court under various theories of recovery, but all by the vehicle of an action brought under § 1983." (Defs.' Mot. at 6). The plaintiffs dispute this claim citing the jurisdictional allegation in their complaint, which states:

> This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under federal law, particularly Title 42 U.S.C. §§ 1983 and 1985, and §§ 1, 2, 3, 7, 9, and 11 of the Kansas Bill of Rights. This Court has jurisdiction of this claim, under and by virtue of, Title 28 U.S.C. §§ 1331, 1343, 2201 and 2202. This Court has jurisdiction over the pendant state law claims pursuant to Title 28 U.S.C. § 1367(a).

Once again, plaintiffs' position is erroneous. The plaintiffs' pendant state law claims for damages have been dismissed, pursuant to the court's order of September 21, 2001. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, § 1983 is the statute which allows the plaintiffs to file this civil suit to enforce their rights and to seek recovery.

Accordingly, the court must determine whether an unincorporated association is a "person" entitled to relief under § 1983. The defendants assert that they have "been unable to find any precedent in which the issue presented here has been addressed." (Defs.' Mot. at 9). Likewise, the court can find no authority providing an extended discussion of this question. In *Esperanza Peace and Justice Center v. City of Antonio*, 2001 WL 685795 (W.D.Tex.2001), the plaintiffs were two unincorporated associations engaged in the arts and other cultural activities who brought suit under § 1983. The *Esperanza* court found that the plaintiffs were "'persons' entitled to sue under 42 U.S.C. § 1983." *Id.* at *1. Yet, the *Esperanza* opinion provides little insight into its reasoning.

However, the question of who or what constitutes a "person" entitled to relief under § 1983 has been addressed in a variety of other contexts. **On many occasions, courts have held that a corporation constitutes a "person" entitled to relief under § 1983.** *ANR Pipeline Co. v. Michigan Pub. Serv. Comm'n,* 608 F.Supp.

43, 46 (W.D.Mich.1984) **(citations omitted)**. In *Mille Lacs Band of Chippewa Indians v. State of Minnesota,* the court concluded that an Indian band was a "person" within the meaning of § 1983 and entitled to seek relief. 853 F.Supp. 1118 (D.Minn.1994):

> The State has presented no arguments in support of its defense that the Band is not a statutory person. Labor unions, corporations, and non-profit organizations are all statutory persons. *See Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 881 n. 9, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (corporation); *Allee v. Medrano,* 416 U.S. 802, 819 n. 13, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (union); *NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (civil rights organization). To find that tribes are ... "other persons" [within the meaning of Section 1983] furthers the broad intent of Congress to provide a federal remedy for the abridgement of federally secured rights such as plaintiffs' treaty-based usufructuary rights by persons acting under color of state law. (citation omitted).

*Id.* at 1127.

Courts have also found some parties are not entitled to seek relief under § 1983. For example, in *Barbara Z v. Obradovich,* the court concluded that a school district was not a proper plaintiff under § 1983. 937 F.Supp. 710, 722 (N.D.Ill.1996) as the school district was a political subdivision of the state. *Id.* The court stated the purpose of § 1983 is the "the vindication of individual interests against state action ... Allowing a state or one of its political subdivisions to bring suit under section 1983 effectively 'turns the statute on its head.'" *Id.* (quoting *Com. of Pa. v. Porter,* 659 F.2d 306, 315 n. 3 (3rd Cir.1981)).

Likewise, many courts have held that other political subdivisions of states cannot bring suit under § 1983. The Tenth Circuit provided a summary of such law in *Rural Water Dist. No. 1, Ellsworth, Kansas v. City of Wilson, Kansas,* stating:

> A political subdivision of a state may not bring certain constitutional challenges against another political subdivision. *See Branson Sch. Dist. RE–82 v. Romer,* 161 F.3d 619, 628 (10th Cir.1998) (noting that "a municipality may not bring a constitutional challenge against its creating state when the constitutional provision that supplies the basis for the complaint was written to protect individual rights, as opposed to collective or structural rights"); *Housing Auth. v. City of Ponca City,* 952 F.2d 1183, 1190 (10th Cir.1991) (noting that "a political subdivision of a state may not challenge the validity of an act by a fellow political subdivision under the Fourteenth Amendment unless such an action is expressly authorized by the creating state").

243 F.3d 1263, 1273 (10th Cir.2001).[4]

In *Citizens Against Tax Waste v. Westerville City Sch. Dist. Bd. of Educ.,* 985 F.2d 255 (6th Cir.1993), the Sixth Circuit considered the right of an unincorporated association to seek reimbursement for attorneys' fees expended in a § 1983 action. Although, it did not squarely address whether an unincorporated association is a "person" entitled to relief under § 1983, it ultimately held that "CATW does have authority and standing to pursue the claim before this court for reasonable attorney fees and costs." *Id.*

This court holds that an unincorporated association is a "person" entitled to

---

**4.** However, in *Rural Water Dist. No. 1,* the Tenth Circuit ruled that a quasi-municipality may bring a § 1983 suit to enforce a federal statutory right, rather than a constitutional challenge. 243 F.3d at 1274.

seek relief under § 1983. Labor unions, corporations, municipal corporations, non-profit organizations, and Indian tribes have all been recognized as "persons" for the purposes of § 1983. This is not a state or political subdivision of a state. The court can find no reason why the ability to seek relief under § 1983 should be denied to unincorporated associations. This finding furthers the broad remedial Congressional purpose behind its enactment, and is consistent with the decisions in *Esperanza* and *Citizens Against Tax Waste.* Plaintiff OSA is a "person" entitled to seek relief under § 1983, and **the court therefore denies the defendants' summary judgment motion in part.**

### B. Status of plaintiffs

The defendants argue that the plaintiffs do not have standing to bring many of the claims alleged in the complaint. Specifically, the defendants argue "the only claims for which standing can be found are facial challenges by the individual defendants to the [p]arade [o]rdinance." (Defs' Mot. at 11). The court disagrees.

In *Lujan v. Defenders of Wildlife,* the Supreme Court discusses the three requirements necessary for Article III standing:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant,

and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561, 112 S.Ct. 2130.

### 1. Application of the parade ordinance

The defendants argue that the individual plaintiffs [plaintiffs Lippoldt and Benham][5] lack standing to bring claims challenging the application of the parade ordinance, because: 1) all parade permits were requested in the name of OSA; 2) no plaintiff has current, specific plans for parades in the City of Wichita in the future; 3) plaintiff Benham's name appears nowhere on the parade applications in any capacity; 4) plaintiff Lippoldt was applying for the parade permit as an agent.

The defendants' claim that "all parade permits were requested in the name of OSA," is not wholly supported by the record. The uncontroverted facts establish "the parade applications that were submitted for approval were in the organization name of either Operation Save America—Wichita, or Operation Save America—National, with the applicant name listed as Donna Lippoldt." Plaintiff Lippoldt also signed the permits.

Secondly, plaintiffs Lippoldt and Benham have suffered an actual, concrete and particularized injury. The standing determination does not depend solely on who actually requested the parade permits. The plaintiffs clearly are members of OSA.

---

**5.** The defendants focus their arguments on plaintiffs Lippoldt and Benham. In this section, the defendants proceed under the belief that plaintiff OSA is not entitled to relief under § 1983.

If an unconstitutional application of the parade ordinance occurred, then the ability of the members of OSA to parade was affected. Thus, plaintiff Lippoldt and Benham suffered an "injury in fact."

The defendants do not address whether plaintiff OSA has standing to challenge the application of the parade ordinance, but the court has an independent duty to consider such jurisdictional issues before reaching the merits of the case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Examining the record, the court finds that OSA has standing to bring claims concerning the application of the parade ordinance. "It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review." *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (citations omitted). However, the court notes that organizations are generally allowed to seek declaratory, injunctive or other prospective relief on the behalf of their members. *Warth v. Seldin,* 422 U.S. 490, 515–16, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Organizations are less likely to be allowed to seek damages on behalf of their members. *Id.* As neither party has briefed this issue, the court will decline to address the damage issue at this time.

In conclusion, the court holds that plaintiffs Lippoldt, Benham, and OSA have standing to challenge the application of the parade ordinance. Accordingly, the defendants' summary judgment motion is denied in part.

### 2. Municipal order

The defendants argue that the individual plaintiffs lack standing to bring claims challenging the municipal order, because: 1) individual plaintiffs nor any individual affiliated with OSA was arrested during the time period the municipal order was in effect; 2) the plaintiffs signed a non-

violence pledge that foreclosed the possibility of the order having any effect on them; 3) none of the plaintiffs were subjected to the strictures of the municipal order. In response to this argument, plaintiffs assert that plaintiff Benham and many others were deterred by the municipal order.

■ The court agrees with the defendants' argument. The plaintiffs have failed to demonstrate that an "injury in fact" has occurred. The plaintiffs need not be exposed to actual arrest or prosecution under the municipal order to challenge it. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 1223–24, 39 L.Ed.2d 505 (1974). However, they must show a "threat of arrest ... [which] was realistic and substantiated by evidence of actual arrest or actual warnings of arrest." *Hodgkins ex rel. Hodgkins v. Peterson,* 175 F.Supp.2d 1132, 1149 (S.D.Ind.2001) (citations omitted). The plaintiffs fail to do so. In response to a summary judgment motion, "mere allegations of injury" are insufficient to establish standing. *Dept. of Commerce v. United States House of Representatives,* 525 U.S. 316, 329, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999). Plaintiffs assertion that they were deterred by the municipal order demonstrates at best a hypothetical interest in the municipal order which is insufficient to establish standing.

The court therefore concludes that plaintiff OSA also lacks standing to pursue claims relating the municipal order and dismisses those claims. The court grants the defendants' motion for summary judgment in part.

### C. Status of the facial challenge to parade ordinance

Defendants assert that "a facial challenge on the licensing ordinance [parade ordinance] on First Amendment freedom of expression grounds by the individual

plaintiffs is all that is left to plaintiffs after the court's jurisdictional analysis." (Defs.' Mot. at 13). However, as discussed above, the court declined to adopt the underlying premises urged by defendants, i.e., that plaintiff OSA is not a "person" entitled to relief under § 1983 and that **plaintiffs lack standing to challenge application of the parade ordinance.** Thus, the facial challenge to the parade ordinance is not the only remaining theory of recovery for the plaintiffs. However, the court will consider whether the defendants are entitled to summary judgment on that basis.

The plaintiffs dispute the defendants' argument, stating that the "[d]efendants assert the challenged regulation can be interpreted many ways including reading other City Code sections into Chapter 3.13 as a reason to deny a parade permit application." (Pls.' Resp. at 23). The plaintiffs make a number of other similar assertions. However, the court finds that these arguments are only appropriate for the examination of whether the parade ordinance was unconstitutional as defendants applied it, and are not relevant to the narrow issue of whether the parade ordinance is constitutional on its face. As the plaintiffs themselves acknowledge, "in a facial challenge the facts are not even relevant because the issue is decided purely by comparing the challenged regulation to the legal standards." (Pls.' Resp. at 23).

In their response, the plaintiffs also request affirmative relief in the form of a permanent injunction. (Pls.' Resp. at 23). However, plaintiffs have not sought a permanent injunction in their pleadings and the matter is not properly before the court.

Thus, the court's earlier ruling that "the parade ordinance is constitutional on its face" (Dkt. No. 21 at 7) is wholly supported and uncontroverted. Accordingly, the courts grants the defendants' summary judgment motion in part and finds the parade ordinance is constitutional on its face.

### D. Status of claims against defendant City of Wichita

Finally, the defendants argue that the City of Wichita should be dismissed from this action, because the uncontroverted facts show no constitutional violation by the City. The plaintiffs dispute the defendants' claim stating "[t]he City's Ordinance may appear acceptable on the surface, but digging just below the surface one finds a hidden 'unwritten' policy allowing, in actuality, the complete ban of speech activities the [d]efendants dislike." (Pls.' Response at 35). The plaintiffs argue:

[D]efendants testified that it was a "discretionary interpretation" of Chapter 3.13 that led to the decision to deny plaintiffs parade permit applications. Defendants' interpretation of Chapter 3.13 is that a parade may occur on a street and if the defendants close the street a parade may not occur because the street is no longer, by definition, a street. As in this case, defendants could use the same excuse to deny any parade application ever presented.

*Id.* (citations omitted).

The Tenth Circuit considered a § 1983 claim brought against a city in *Cannon v. City and County of Denver,* 998 F.2d 867 (1993). In this case, the court provided:

The touchstone of a § 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution. Municipal liability may not be premised on employment of a tortfeasor with liability imposed under a *respondeat superior* theory. Municipalities can be held liable only when an injury was inflicted by execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.

*Id.* at 877 (citing *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 690–91, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121–22, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion)). "As we explained in *Watson v. City of Kansas City,* 857 F.2d 690, 695 (10th Cir.1988), an unconstitutional policy or custom need not be formal or written to create municipal liability. Rather, a municipality may be held liable when the illegal practice is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *Camfield v. City of Oklahoma City,* 248 F.3d 1214, 1229 (10th Cir.2001) (quoting *Cannon,* 998 F.2d at 877) (additional citations omitted).

■ Plaintiffs need not show that Chapter 3.13 or any other written policies of Wichita are unconstitutional. However, in order to hold the City of Wichita liable there must be an "illegal practice [that] is so permanent and well settled as to constitute a 'custom or usage' with the force of law." 248 F.3d at 1229. The plaintiffs cannot rest their argument on mere allegations. They must present significant admissible probative evidence. Examining the record, the court can find no such permanent and well-settled practice of denying parade permits. The plaintiffs' bare allegation that the City of Wichita "could use the same excuse to deny any parade application ever presented" simply is not proof that such illegal practices occurred. Accordingly, the court grants the defendants' motion for summary judgment in part and dismisses defendant City of Wichita from this action. IT IS THEREFORE ORDERED this 28th day of May, 2003 that the court grants the defendants' motion for summary judgment (Dkt. No. 92) in part and denies the motion in part as set forth in the body of this Memorandum and Order. Accordingly, the court: 1) dismisses all claims based on the municipal order; 2) finds the parade ordinance to be constitutional on its face; 3) dismisses all claims against defendant City of Wichita.